The TIMKEN COMPANY, Plaintiff-Appellee,

v.

LOCAL UNION NO. 1123, UNITED STEELWORKERS OF AMERICA, AFL–CIO, et al., Defendants-Appellants.

No. 72–1844.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 30, 1973.

Decided July 6, 1973.

Carl B. Frankel, United Steelworkers of America, AFL–CIO, Pittsburgh, Pa., for defendants-appellants; Rudolph L. Milasich, Jr., Pittsburgh, Pa., Bredhoff, Barr, Gottesman, Cohen & Peer, Washington, D. C., Clayman, Jaffy & Taylor, Columbus, Ohio, on brief; Bernard Kleiman, Chicago, Ill., of counsel.

John F. Buchman, Canton, Ohio, for plaintiff-appellee; John G. Ketterer, Day, Ketterer, Raley, Wright & Rybolt, Canton, Ohio, on brief.

Before PHILLIPS, Chief Judge, PECK, Circuit Judge, and KENNEDY,* District Judge.

PECK, Circuit Judge.

The complaint herein sought, under 29 U.S.C. § 185 and 9 U.S.C. § 12, an order vacating a labor arbitrator's award. The award had been entered following a hearing on an employee's grievance alleging an improper separation. The District Court vacated that award on the basis that the Arbitrator had exceeded his authority. We affirm.

Thad Tyson, an employee of the appellee-corporation and a member of the appellant union, was sentenced to serve a 117 day jail term by a Municipal Court Judge in Canton, Ohio, after Tyson pled guilty to two traffic offenses. On the next scheduled workday after Tyson began serving his sentence, Tyson's wife reported to the appellee-employer that her husband would be unavailable for work. At a later date she advised that he was in confinement. There was testimony at the arbitration hearing that the wife was advised by the appellee's general foreman that such absence in excess of seven consecutive workdays would result in a termination. On December 30, 1970, a separation notice was issued by the appellee-employer on the basis of Tyson's unauthorized absence for seven consecutive workdays. For reasons not apparent from the record, Tyson was released from confinement on January 15, 1971, after serving only 29 days, whereupon he received notice of the separation. Responding to the separation notice, he filed a grievance on January 25, 1971. The grievance was submitted to an arbitrator who determined that the appellee-employer had wrongfully terminated the employment as a "voluntary quit" under their collective bargaining agreement. The agreement provides:

"An employee's length of service shall be broken and credit for all previous service lost by:

"1. Voluntarily quitting the service of the Company (an unauthorized absence of seven (7) consecutive scheduled work days shall be considered a voluntary quit); . . . ."

The Arbitrator found the "voluntary quit" provision inapplicable to cases such as here where the employee had no intention to quit and had promptly notified the employer of his predicament. According to the Arbitrator, the "voluntary quit" provision was intended to apply to those cases where the employee's whereabouts were unknown or the employee was in control of the circumstances and nevertheless absented himself from work for longer than the prescribed period. The Arbitrator ruled that the termination was a discharge under Article X of the bargaining agreement and that Tyson was entitled to reinstatement since the appellee-employer had failed to comply with Article X's requirements regarding discharge. Article X provides:

"A. Before an employee is discharged, either in or outside of the department in which he works, the supervisor who is making the discharge will call the Union Steward or member of the Plant Grievance Committee, in this order, if available in the department in which the employee works at the time of the discharge, and will acquaint him with the circumstances of the case, and will also tell the employee, in the presence of the Union Representative, why the employee is being discharged.

"B. In the event an employee shall be discharged from his employment from and after the date hereof and he believes he has been discharged improperly, such discharge shall constitute a case arising under the method of adjusting grievances herein provided.

---

* Honorable Cornelia G. Kennedy, United States District Judge for the Eastern District of Michigan, sitting by designation.

In the event it should be decided that the employee is not guilty of the matter charged as the basis of his discharge, the Company shall reinstate such employee and pay full compensation at the employee's regular rate of pay less any wages received from employment accepted in place of his former employment with the Company and/or unemployment compensation received during the period of back pay.

"C. In all such cases of discharge, the written grievance signed by the discharged employee shall be given to his immediate supervisor within ten (10) calendar days from the date of discharge. The discharge of an employee shall be final in any case where such written grievance is not filed within such ten (10) calendar day period. It is agreed that in handling any grievance involving the discharge of an employee, the provisions of Article IX—Adjustment of Grievances commencing with Step 3 shall be followed with the time limits as outlined below: . . . ."

In vacating the award, the District Court held that since the Arbitrator did not find that the employee's absence was authorized by the employer, the Arbitrator was bound by the appellee-employer's determination that the absence was unauthorized and should have sustained the ruling that the unauthorized absence was a voluntary quit within the terms of the collective bargaining agreement.

■ Considering first the aspect of judicial review of an arbitrator's award, we note that the federal courts are severely restricted in their function by statute. See, 9 U.S.C. § 10. As a result, while a court is empowered to determine whether an arbitrator's award exceeded the limits of his contractual authority (see, Truck Drivers & Helpers Union Local 784 v. Ulry-Talbert Co., 330 F.2d 562 (8th Cir. 1964)), it may not review the merits of an arbitration

award. As stated in the leading case on the subject,

"It is the arbitrator's construction that was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960).[1]

Accordingly, unless the award manifests a clear infidelity to the arbitrator's obligation of drawing the "essence" of the award from the bargaining agreement, a court must refuse to substitute its judgment on the merits for that of the arbitrator. *Enterprise, supra,* at 597, 80 S.Ct. 1358; see, also, Baldwin-Montrose Chemical Co. v. International Union, United Rubber, Cork, Linoleum and Plastic Workers of America, AFL-CIO, 383 F.2d 796 (6th Cir. 1967).

As the uncontroverted testimony of appellee's personnel director indicates, the appellee had maintained a consistent policy of categorically denying authorized absences to employees confined to jail. However, the Arbitrator went beyond this testimony and the record and concluded that there was discriminatory conduct by the appellee in denying authorizations in the jail confinement situations, while apparently maintaining a liberal authorization policy in the instance of an employee's illness or injury. According to the Arbitrator, this inconsistency was sufficient to invalidate the lack of authorization in Tyson's case and cause the matter to be considered a discharge.

■ We conclude that the Arbitrator exceeded his authority in finding as he did. The "voluntary quit" provision of the agreement specifically applies to circumstances of "an unauthorized absence for seven (7) consecutive scheduled work days." Consequently there

---

1. The *Enterprise* case, the third of the famous Steelworkers trilogy, outlined the proper role of the judiciary in labor arbitration cases.

was no need to go outside the record and consider other definitions of the term "quit." A collective bargaining agreement is after all a contract and the arbitrator is limited to the interpretation and application of that contract. John Wiley & Sons, Inc. v. Livingston, 376 U. S. 543, 84 S.Ct. 909, 11 L.Ed. 898 (1964). Particularly where an agreement provides definitions of its own terms, the arbitrator clearly exceeds his own authority by seeking conflicting definitions outside the record.

We recognize that, as in many contracts, there are far too many unforeseeable contingencies to require reliance on the collective bargaining agreements as the exclusive source of rights and duties. All contracts including collective bargaining agreements, are executed in the context of common law and legislation which govern the rights and duties of the contracting parties. A recognized law of the shop operates to provide a context for the agreements if only because of the "institutional characteristics and the governmental nature of the collective bargaining process." Cox, Reflections Upon Labor Arbitration, 72 Harv.L.Rev. 1482, 1498–1500 (1959). Here the Arbitrator has only referred to one 1960 arbitration award which appears of questionable application and has made no reference whatsoever to shop practices.[2]

In addition, the Arbitrator opined that the purpose of the "voluntary quit" provision is to discipline employees who abandon their jobs, even though the record does not contain any evidence of the intent or purpose of the parties in placing the provision in the agreement. The term "unauthorized" as used in the subject provision may encompass such a meaning, but the record offers nothing to show that its meaning was purposely restricted by the parties to such a rationale. In the absence of evidence indicating that the parties to this contract intended to restrict the scope of the term "unauthorized," we conclude that the Arbitrator exceeded his authority in stating the provision's purpose without support in the record. Such a conclusion is particularly merited since the agreement contains clauses, standard language today, foreclosing the arbitrator from substituting his discretion for the company's and from modifying the language of the agreement.

Considering, then, indications of the parties' intentions such as language and context, we conclude that the Arbitrator's award not only cannot be rationally deduced from the agreement but also manifests clear infidelity to the arbitrator's obligation to draw the essence of the award from the bargaining agreement.

The judgment of the District Court is affirmed.

HARRY PHILLIPS, Chief Judge. (dissenting).

I respectfully dissent. I would hold that the arbitrator's decision was based upon his interpretation of the collective bargaining agreement. As such, it would be inappropriate for this Court to affirm the judgment of the District Court vacating the arbitration award merely because we may disagree with the analysis made by the arbitrator. See United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S. Ct. 1343, 4 L.Ed.2d 1403 (1960);

2. In this regard, we intimate no view as to the merits, but, rather, merely notice that even though the Arbitrator could have properly utilized sources outside the agreement for guidance and context, the dearth of such information in his opinion makes it difficult to contradict the unambiguous language of the agreement. It is axiomatic that if the arbitrator undertook to, in effect, amend the contract, to substitute his own discretion for that of the parties or to dispense "his own brand of industrial justice," the enforcement of the award must be denied. See Enterprise, *supra*; United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); United Steelworkers of America v. Timken Roller Bearing Co., 324 F. 2d 738, 740 (6th Cir. 1963).

The decision of the District Court, in my opinion, should be reversed.