**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, (UAW), and its Local Union No. 157, Plaintiffs,**

v.

**BUHR MACHINE TOOL CORPORATION, Defendant.**

Civ. A. No. 4–70108.

United States District Court,
E. D. Michigan, S. D.

Sept. 16, 1974.

**1358**

Charles Looman, Jr., Detroit, Mich., for plaintiff.

Robert Rosenfeld, Bloomington, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

KEITH, District Judge.

This is an action by the plaintiffs (the Union) under § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, to enforce an arbitration award. The Union has moved pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, and the Defendant, (the Company) has cross-moved, for a summary judgment. There are no material facts in dispute.

### I

The Union and Company are parties to a collective bargaining agreement entered into on August 14, 1971. This agreement was consummated after extended negotiations on the issue of sub-contracting. It was finally agreed that the formal contract should contain nothing on the subject, and that a separate letter of agreement should be signed by the parties to cover the terms of any subcontracting done by the Company during the life of the contract.

The letter-agreement provided, in pertinent part:

"1. Sub-contracting is a necessity in the Machine Tool Industry.

"2. The Company has an unlimited right to sub-contract work when it lacks the manpower, skills, or equipment to perform the work or where the available work hours are not sufficient to meet delivery dates.

"3. When work is sub-contracted which differs from the circumstances which have historically been the basis for a decision to sub-contract, the Chief Steward will be notified in advance of the date when such work is let. The Company will give due weight to the Union's comments with respect to all the attendant circumstances.

"4. The Company assures the Union that in the exercise of its right to sub-contract as described above, it is not the intent of the Company to erode the bargaining unit nor to grant more Job hour opportunity to the in-plant sub-contractor than to the Buhr Employees in the classification in which the Sub-contractors are working."

On December 13, 1971, the Union filed two grievances which alleged that the letter-agreement, *supra*, had been violated. The grievances charged:

"Grievance No. 5114. The Company is violating the above mentioned portion of the Agreement by Sub-contracting work which could be done by Buhr Bargaining Unit Employees without fully utilizing its available manpower or work hours. In the past the Company had had a policy of working its employees a minimum of 58 hours per week when work was available before sub-contracting work which could be done here. Presently the Company is working many classifications 40 hours per week and subcontracting their work in excess of 40 hours. In addition to violating the actual letter of the agreement the Company is following a policy which is different from that which it announced during negotiations, that of having Unit Members do work which

would be done here before sub-contracting that work.

"Grievance No. 5115. The Company is failing to replace employees who retire, quit or otherwise terminate employment. Instead the Company is subcontracting the work which formerly was done by these employees. There has been sufficient time for the Company to act to replace these employees since the Union returned to work following the recent strike and despite an inquiry by the Chief Steward as to when this would be done the Company has taken no action. This inaction by the Company is a clear case of erosion of the Bargaining Unit in violation of the Agreement."

The Company denied the charges and the dispute was appealed to arbitration. A hearing was held on July 17, 1972 at which both parties were represented. The arbitrator issued his opinion on November 3, 1972. The Award concluded: "Both grievances are sustained, and the arbitrator retains jurisdiction for ninety . . . days in connection with any disputes which may arise in carrying it out." Arbitrator's Award and Opinion, Case No. 54 30 0200 72, at 26. It was pointed out in the Award and Opinion that the Company had failed to make available to the Arbitrator and Union materials relative to the degree of sub-contracting that had been done, and the Arbitrator added that such "data should be made freely available . . . and the remedies under this Award must be conditioned upon that disclosure," at 23–24.

Subsequent to the announcement of the Award, the parties were not able to agree on a method of implementation, with the Company taking the position that the Award was not proper and that the hearing should be reopened. Pursuant to mutual agreement, the hearings were re-opened, but only for the limited purpose of implementing the original Award. The Company, however, continued to seek to reargue the issues which

the Union considered had been resolved by the Award and Opinion.

The Arbitrator requested the assistance of the parties in fashioning the remedy. The Union complied in the form of a post-hearing brief and affidavit. While the Company did not object to the method of the Union's response, it took no part in shaping the remedy, insisting, instead, that the Award had been improper. After the Arbitrator's remedy was announced, the Company refused to comply with it, and this action was instituted by the Union.

The clauses in the collective bargaining agreement which are relevant to this action are as follows:

Article I, Section I of the collective bargaining agreement. "The Company recognizes the Union as the sole collective bargaining agency for hours, wages, and other conditions of employment for all production and maintenance workers, including receiving and shipping department personnel, inside and outside truck drivers, inspectors and janitors, engaged on jobs in its Ann Arbor, Michigan plant located at 839 Green Street, excluding all salaried employees which include but are not limited to office employees and professional employees, and all guards and supervisors as defined in the Act."

Article II, Section 3 of the collective bargaining agreement. "It is further recognized that the responsibility of the management of the Company for the selection and direction of the working forces, including right to hire, suspend, or discharge for proper cause, promote or transfer, to determine the amount of overtime to be worked, to relieve employees from duty because of lack of work or for other legitimate reasons, is vested exclusively in the Company, subject to the seniority rules, grievance procedure and other provisions of this agreement as herein set forth. Also recognized is the right of the Company to establish

# 1360

reasonable plant rules and regulations for the purpose of maintaining order, safety and/or effective operation of the plant. The Union reserves the right to question the reasonableness or the application of such rules through the grievance procedure."

Article VI, Section 5 of the collective bargaining agreement. "Either party upon written notice to the other, may request that a grievance be referred to the American Arbitration Association for arbitration. The Company and the Union agreed to accept the arbitrator's awards as final and binding."

## II

■ Both parties agree on the applicable law. It is well settled that under the Steelworkers Trilogy* and 9 U.S.C. § 10, this Court is limited in its review of the Arbitrator's decision to two issues: (1) Did the party submit the issues in dispute to arbitration and (2) did the award and implementation draw their essence from the collective bargaining agreement. Both parties agree that the dispute involved in this action was submitted to arbitration, the issue, therefore, is whether the arbitrator's decision was based in the terms of the agreement. The Court thinks that it was.

■ In Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; the Supreme Court said:

"The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. . . ."

"The courts . . . have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim." 363 U.S., at 568, 80 S.Ct., at 1346 (Footnote omitted).

Again, in United Steelworkers v. Enterprise Wheel and Car Corporation, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424, (1960), the Court expressed the view that the Court's role in reviewing an arbitration award is limited:

"As we there emphasized, the question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." 363 U.S. at 599, 80 S.Ct. at 1362.

The law in this Circuit, of course, reflects this limitation. In Kroger Company v. IBT, Local No. 661, 380 F.2d 728 (6th Cir. 1967), the Court said:

"We reiterate that a court cannot substitute its judgment or interpretation of a collective bargaining agreement for that of the arbitrator. The fact that a court might have applied a different interpretation . . . is no reason for setting aside the arbitrator's award." 380 F.2d at 732.

See also, Timken v. Local 1223, Steelworkers, 482 F.2d 1012 (6th Cir. 1973).

Buhr seeks to have the arbitrator's awards vacated on the narrow ground that the arbitrator exceeded his powers in reaching his decision and therefore that the award does not flow from the terms of the collective bargaining agreement. In support of this argument it relies heavily upon Timken Company v. Local 1223, Steelworkers, *supra*; and Amanda Bolt Company v. Auto Workers, 451 F.2d 1277 (6th Cir. 1971).

The defendant's contention is that the arbitrator's decision evidenced a degree of partiality warranting its vacation. The defendant, however, relies on authorities which are inapposite to the facts of this case. In both *Timken*, supra and *Amanda*, supra the contract

---

* United Steelworkers v. American Mfg., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; United Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

which the arbitrators purported to interpret contain limitations on the scope of their inquiry. In both cases, the findings of the arbitrators showed clearly that their Award had gone beyond their authority. In *Timken* the Court said:

> A collective bargaining agreement is after all a contract and the arbitrator is limited to the interpretation and application of that contract . . . [p]articularly *where an agreement provides definitions of its own terms, the arbitrator clearly exceeds his own authority by seeking conflicting definitions outside the record*." 482 F.2d, at 1015 (Citation omitted, emphasis added).

We are not faced with conflicting definitions or express limitations in this case. The clear language of the letter-agreement shows that sub-contracting was supposed to be predicated on "available work hours" being insufficient to meet delivery dates. The arbitrator therefore had to determine what constituted "available work hours." This was his function, and the Court cannot say that his decision did not derive from the essence of the letter-agreement.

■ The Court, as the defendant suggests, may inquire into the award for the limited purpose of determining if it had any basis in the agreement. The standard for that inquiry, however, is whether the award "was so unfounded in reason and fact, so unconnected with the wording and purpose of the collective bargaining agreement as to 'manifest an infidelity to the obligation of the arbitrator'." Railroad Trainmen v. Central of Georgia RYCO., 415 F.2d 403, 415 (5th Cir. 1969) (Footnote omitted). Based upon the facts presented and upon a reading of the award and the implementation of the award, this Court does not believe that the arbitrator exceeded his authority.

■ The defendant urges this Court to find limitations on the arbitrator's powers in the language of the agreement which reads that "[t]he arbitrator shall have no power to add to, subtract from, or modify any of the terms of this Agreement." But the Court believes that this is not the kind of limitation involved in *Timken* and *Amanda*. As the Court said in Western Iowa Pork Company v. Nat. Bro. Packing and Dairy Workers, 366 F.2d 275 (8th Cir. 1966):

> "This exclusion is broad and general in its application and does little more than repeat the law found in the *Enterprise* case . . . to the effect that an arbitrator is 'confined to interpretation and application of the collective bargaining agreement.' This exclusion does not clearly take this dispute or the award outside the specifically granted authority of the arbitrator. Therefore, resolving all ambiguity of authority, as we must, in favor of coverage, we have no alternative but to hold that the awards are valid." 366 F.2d at 278.

■ The defendant finally raises questions regarding the specific remedies ordered by the arbitrator. It is the contention of Buhr that each aspect of the arbitrator's remedy is evidence that he exceeded his authority and exercised "his own sense of industrial justice." The Company's argument, however, goes to the merit of the award, and this Court will not allow its review to extend that far. United Steelworkers v. Enterprise Wheel and Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

This Court agrees with the decision in Western Iowa Pork Co. v. National Brothers Packing and Dairy Workers, 366 F.2d 275 which said:

> "On the contrary, the issues raised by the Union relate directly to the Agreement, are on their face governed by the Agreement, and the interpretations placed on the pertinent parts of the Agreement by the arbitrator are permissible. The arbitrator acted within the scope of his authority under the Agreement in rendering the award. This Court, as well as the District Court, need not and cannot pass upon the merits of the awards." 366 F.2d at 278.

### III

The Union seeks to have this Court retain jurisdiction of this matter pending satisfactory compliance by the Company with the order herein. The Court does not feel, however, that it is necessary to monitor the implementation of this order. The Court was called upon to enforce the arbitrator's award; having done that, it is now incumbent upon the parties to implement it.

Finally the Union seeks an award of attorney fees. The Court does not think that the circumstances of this action warrant such an award. In an exceptional case, attorney fees may be appropriate, but this is not such a case. Bangor and A. R. Co. v. Brotherhood of Loc. Fire. and Eng., 143 U.S.App.D.C. 90, 442 F.2d 812 (1971); Local No. 149, I. U., U. A., A. & A. I. W. v. American Shoe Co., 298 F.2d 212 (4th Cir. 1962).

It is therefore ordered that the Union's Motion for Summary Judgment be, and the same hereby is granted.

It is further ordered that the Company's Motion for Summary Judgment be, and the same hereby is, denied.