**DETROIT COIL COMPANY,**
**Plaintiff-Appellant,**

v.

**INTERNATIONAL ASSOCIATION OF MACHINISTS & AEROSPACE WORKERS, LODGE # 82, Defendant-Appellee.**

**No. 77–1144.**

United States Court of Appeals, Sixth Circuit.

Argued Nov. 27, 1978.

Decided March 21, 1979.

R. Ian Hunter, C. John Holmquist, Jr., Bloomfield Hills, Mich., for plaintiff-appellant.

Jerome G. Quinn, Smith & Quinn, Detroit, Mich., for defendant-appellee.

Before WEICK, Circuit Judge, PHILLIPS, Senior Circuit Judge, and GREEN, Senior District Judge.*

PHILLIPS, Senior Circuit Judge.

Detroit Coil Company (the Company) appeals from an order of the district court denying the Company's application for vacation of an arbitration award.

During the course of processing an employee grievance through the various steps of the contractual grievance procedure, a dispute arose between the Company and the International Association of Machinists and Aerospace Workers, Lodge # 82 (the Union). The dispute concerned the Union's compliance with a notification requirement

---

* The Honorable Ben C. Green, Senior Judge, United States District Court for the Northern District of Ohio, sitting by designation.

contained in Article V, the grievance procedure section of the collective bargaining agreement between the Company and the Union (the Agreement). The parties agreed to submit to arbitration the question whether that procedural requirement of the Agreement had been satisfied. The arbitrator held in favor of the Union, finding that the notification requirement of Article V had been waived by the past practices of the Company and the Union.

The Company brought this action under 29 U.S.C. § 185 and 9 U.S.C. § 10(d) to vacate the arbitrator's award on the ground that the arbitrator exceeded his authority under the Agreement by ignoring its express terms in his determination. The district court denied the Company's application to vacate the arbitrator's award, finding that the arbitrator had made factual determinations concerning the scope of a past practice. The district court held that the correctness of the arbitrator's decision was not subject to review, so long as the decision was based upon a construction of the contract and the manner in which the contract had been interpreted and applied by the parties in the past.

We reverse.

## I

The Company and Union were parties to a collective bargaining agreement that ran from October 1, 1975, to October 1, 1978, Article V of the Agreement set forth a procedure for the adjustment and resolution of any grievances that arose from the day-to-day administration of the Agreement. Article V provided, in pertinent part:

### Grievance Procedure

1. The procedure for the adjustment of grievances shall be as follows:

(a) The employee shall endeavor to adjust his grievance with the foreman and steward. If no satisfactory settlement is reached within 24 hours, the grievance shall be placed in writing and referred to:

(b) Chief Steward and Plant Manager. If still unsettled within 48 hours, the matter shall be referred to:

(c) 1. Committee of the Union, Union officials and officials of the Company. Should the grievance not then be settled satisfactorily, the case shall be referred to the American Arbitration Association for the selection of an impartial arbitrator. Matters properly referred shall be decided by the arbitrator and shall be binding upon both parties to this Agreement. The fees and expenses of the arbitrator shall be borne equally by both parties. It is mutually agreed that whenever possible, the AAA Expidited Arbitration procedure shall be used to process grievances.

(c) 2. The committee, as referred to above, shall consist of the Chief Steward, the Departmental Steward and an authorized representative of the Union, the Plant Manager and a representative of top management. This paragraph shall not preclude either party from calling in witnesses at the proper steps during the grievance procedure.

(d) Unless the American Arbitration Association and the Company is notified within eight (8) working days from the date which last the Local Lodge meets to select an impartial arbitrator, the grievance or grievances shall be considered settled.

(e) Discharged employees must, if aggrieved, file a grievance relating to the discharge within three (3) working days.

An employee, Douglas Caughron, filed a grievance, the merits of which are immaterial to the present appeal. The Company and Union were unable to resolve the grievance under Sections 1(a), (b) or (c) of the grievance procedure. On April 6, 1976, during the course of a Local Lodge meeting, the Union decided to refer the Caughron grievance to the American Arbitration Association (the AAA) for binding arbitration, in accordance with Section 1(c) of the grievance procedure.

On April 30, 1976, the Company received a letter from James D. Leslie, Business Representative of Lodge # 82, informing it that the Union had appealed the Caughron

grievance to the AAA for final resolution. Leslie's letter was dated April 15, 1976. Leonard Jennings, Labor Relations Director of the Company, wrote Leslie in response and stated that the Company regarded the grievance as settled because the Union had failed to notify the Company within the time requirement specified by Article V, Section 1(d) of the Agreement. Jennings pointed out that, pursuant to Section 1(d) of the grievance procedure, the Union was required to notify both the Company and the AAA of the Union's election to pursue a grievance to arbitration within eight working days from the date of the last Lodge meeting, which, Jennings claimed, the Union had failed to do with the Caughron grievance.

In a letter to Jennings dated May 5, 1976, Leslie apologized for the fact that his April 15 letter was late. However, Leslie reiterated that the Union intended to pursue the Caughron grievance to arbitration, stating that both the Company and Union had been "late in administering the steps of the grievance procedure" in the past, but that neither party had used this as an excuse to deny a grievance.

On May 8, 1976, the Company was notified by the AAA that it had received, on April 29, 1976, a letter from the Union requesting arbitration of the Caughron grievance. The AAA indicated that it intended to proceed with an arbitration of the grievance on its merits. Jennings telephoned the AAA and stated that the Company considered the Union's request for arbitration to be untimely. In a subsequent letter to the AAA Jennings noted the specific time requirement of Article V, Section 1(d) and stated that the Union had failed to comply with that notification provision. Jennings calculated that the Company and AAA should have received the Union's request for arbitration no later than April 16, 1976.

On May 17, 1976, the tribunal administrator of the AAA, Mark Sholander, wrote a letter to both the Company and the Union. Sholander stated that, after reviewing the contentions of the parties concerning the timeliness of the Union's request for arbitration of the Caughron grievance, the AAA had determined "that an issue as to arbitrability exists which could be determined by an Arbitrator." Thereafter, the Company and the Union agreed to submit to arbitration the question whether the Union's request for arbitration was timely, in light of the procedural time requirement of Article V, Section 1(d).

The arbitrator issued his opinion and award on July 20, 1976, finding that Caughron's grievance should be heard on the merits. The arbitrator based his decision upon the following conclusions:

In view of the testimony and exhibits presented at this hearing, it is the opinion of this Arbitrator that although the Company did not receive the notification that the Union was taking the Caughron grievance to arbitration until April 30, 1976, the Caughron grievance should be heard on its merits. The letter from the Union to the Company containing the notification is dated April 15, 1976, which falls within the eight (8) working days as required by Article V, Section 1, paragraph (d). No evidence was presented to indicate that it was the intent of the Union to consider the Caughron grievance settled.

In reaching this decision, the Arbitrator takes note that the parties have not used in the past the excuse of time limits to deny a grievance. Union testimony indicated that it did not insist that the Plant Manager respond to grievances within the 48 hour contractual requirement. It moreover waived the time requirements in the Caughron grievance at Step 3 in order to give the owner of the Company, who was out of the city, the opportunity to make his input to the Company response dated March 8, 1976.

The Arbitrator in reaching his decision takes note of the testimony given by the Plant Manager in which he stated that relations between the Company and the Union are good. To deny the arbitrability of the Caughron grievance because the Company did not receive the April 15,

1976, notification letter until April 30, 1976, would, in the view of this Arbitrator, result in a deterioration of the good Company-Union relationship.

We conclude that the award of the arbitrator was contrary to the explicit terms of the Agreement and was beyond the scope of his authority.

## II

■ It is well settled that arbitration as a means of resolving labor disputes is favored and that the courts refrain from reviewing the merits of an arbitration award. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Amanda Bent Bolt Co. v. UAW, Local 1549*, 451 F.2d 1277 (6th Cir. 1971). However, a corollary principle bearing equally on labor arbitration was articulated by the Supreme Court in *Enterprise Wheel & Car Corp.*, 363 U.S. at 597, 80 S.Ct. at 1361:

> [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

■ Among those sources of guidance to which an arbitrator may look are the "practices of the shop" that have developed between the parties in the day-to-day administration of the collective bargaining agreement. The Supreme Court recognized this principle of contract application in *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581–82, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960):

> The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it.

*See also NF&M Corp. v. United Steelworkers of America*, 524 F.2d 756 (3d Cir. 1975); *H. K. Porter Co., Inc. v. United Saw, File and Steel Products Workers of America*, 333 F.2d 596 (3d Cir. 1964).

■ Thus, while an arbitrator has considerable latitude, his powers are not unlimited in the resolution of labor disputes. The arbitrator is confined to the interpretation and application of the collective bargaining agreement, and although he may construe ambiguous contract language, he is without authority to disregard or modify plain and unambiguous provisions. *General Drivers, Warehousemen and Helpers, Local Union No. 89 v. Hays & Nicoulin*, 594 F.2d 1093, (6th Cir. 1979); *Monongahela Power Co. v. Local 2332 IBEW*, 566 F.2d 1196, 1199 (4th Cir. 1976); *Timken Co. v. Local Union No. 1123 United Steelworkers of America*, 482 F.2d 1012 (6th Cir. 1973); *Textile Workers v. American Thread Co.*, 291 F.2d 894 (4th Cir. 1961). Furthermore, "[i]f the arbitrator's award has deviated from the plain meaning of a labor contract provision, it must find support in the contract itself or in prior practices demonstrating relaxation of the literal language." *NF&M Corp.*, 524 F.2d at 759. Accordingly, it is the duty of the courts to ascertain whether the arbitrator's award is derived in some rational way from the collective bargaining agreement. *See Timken Co.*, 482 F.2d at 1015.

Article V, Section 1(d) of the Agreement in the present case clearly and unambiguously provides that "[u]nless the [AAA] and the Company is *notified* within eight (8) working days from the date which last the Local Lodge meets . . . the grievance . . . shall be considered settled." (emphasis added.) The Local Lodge met and considered the Caughron grievance on April 6, 1976. The arbitrator found in his opinion that the Company did not receive notification of the Union's request for arbitration until April 30, 1976. The AAA did not receive the Union letter requesting arbitration until April 29, 1976.

However, the arbitrator concluded that the Caughron grievance was arbitrable, seemingly for a number of reasons. He based his conclusion, in part, on the fact that the Union's notification letter was *dated* on April 15, 1976, within the eight day limitation of Article V, and because there was no evidence to indicate that the Union considered the Caughron grievance settled.

■ The term "notified," as used in the Agreement, must be given its ordinary meaning in the absence of evidence indicating that the parties to this contract intended to expand or otherwise deviate from that meaning. *See Monongahela Power Co.*, 566 F.2d at 1200; *Timken Co.*, 482 F.2d at 1015. The word "notified," in its ordinary usage, means the completed act of bringing information to the attention of another. Webster's Third New International Dictionary, 1545 (14th ed. 1961). That the Union's letter was dated within the eight day time limitation of Article V, Section 1(d) might have been sufficient to satisfy the notification requirement of Article V, Section 1(d) if there were some evidence indicating this to be the parties' understanding of the term "notified." We find nothing in the record before the arbitrator to support his conclusion that the Company and Union intended to expand the scope of the word "notified" to encompass the mere dating of a letter, from the Union to the Company and the AAA, indicating the Union's intent to arbitrate a grievance. We conclude, therefore, that the arbitrator exceeded his authority in so holding.

Furthermore, the arbitrator modified, in effect, the operation of Article V, Section 1(d) to require proof that the Union considered settled a grievance coming within this provision of the Agreement. This section does not contain any language indicating that such concession by the Union is

required. Again, absent evidence to support such a finding, we must conclude that the arbitrator exceeded his authority by modifying a clear and unambiguous provision of the Agreement.

The arbitrator found, as a further basis for his decision, that the Caughron grievance should be heard on the merits, that compliance with Article V, Section 1(d) had been excused by the failure of the parties in the past to enforce the time limitations of that section of the Agreement. The arbitrator noted that "the parties have not used in the past the excuse of time limits to deny a grievance." He also cited two instances where the Union did not adhere strictly to the time requirements of Article V, Section 1(b) and that during the processing of the instant grievance, the Union agreed to a Company request for more time to respond at step 1(c) of the grievance procedure.

That an arbitrator can look for guidance beyond the express terms of the contract to the past application of that contract by the parties is without question. *Warrior & Gulf Navigation Co.*, 363 U.S. at 581–82, 80 S.Ct. 1347. As this court noted in *Timken Co.*, 482 F.2d at 1015:

> A recognized law of the shop operates to provide a context for the agreements if only because of the "institutional characteristics and the governmental nature of the collective bargaining process." Cox, Reflections Upon Labor Arbitration, 72 Harv.L.Rev. 1482, 1498–1500 (1959).

Here, the arbitrator rejected application of Article V, Section 1(d), essentially because he determined that prior application of step 1(b) of the grievance procedure by the Union demonstrated a relaxation of the literal language of Section 1(d).[1]

■ Although a court is precluded from overturning an award for errors in the determination of factual issues, "[n]everthe-

---

1. We note that the arbitrator made mention of the fact that in processing the grievance, the Union acquiesced to a Company request for more time in responding at step 1(c) of the grievance procedure. The arbitrator relied on this fact, in part, in reaching his conclusion that the parties had in the past waived the time requirements of Article V. The fallacy of this reasoning is that Section 1(c) does not have any time requirement within which the Company must respond. In the absence of any facts evidencing some understanding to the contrary, we conclude that this acquiescence is not indicative of any waiver of contractual time requirement.

less, if an examination of the record before the arbitrator reveals no support whatever for his determinations, his award must be vacated." *NF&M Corp.*, 524 F.2d at 760. Notwithstanding the arbitrator's reliance on "past practices" arising from the application of Section 1(b), we find no evidence in the record which would allow the arbitrator to reach the conclusion that the parties to any extent waived compliance with Section 1(d) of the Agreement. The arbitrator's conclusion manifests a clear failure to draw the essence of the award from the Agreement.

Finally, the arbitrator concluded the Caughron grievance was arbitrable because "[t]o deny arbitrability . . . because the Company did not receive the April 15, 1976, notification letter until April 30, 1976, would . . . result in a deterioration of the good Company-Union relationship." Standing alone, we view this assertion as nothing more than the arbitrator dispensing "his own brand of industrial justice." In *Timken Co.*, 482 F.2d at 1015, n. 2, the court stated, as follows:

> It is axiomatic that if the arbitrator undertook to, in effect, amend the contract, to substitute his own discretion for that of the parties or to dispense "his own brand of industrial justice," the enforcement of the award must be denied.

In view of the clear and unambiguous language of Article V of the collective bargaining agreement, and since the record contains no evidence indicating a departure by the parties from the clear intendment of that language, we conclude that the arbitrator's award cannot be deduced rationally from the Agreement, nor does the award draw its essence from the Agreement.

The judgment of the district court is reversed. The case is remanded with directions to set aside the award of the arbitrator and for further proceedings not inconsistent with this opinion.