**GENERAL TELEPHONE CO. OF OHIO, Plaintiff-Appellee,**

v.

**COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO, Defendant-Appellant.**

**No. 79–3469.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 12, 1980.

Decided May 6, 1981.

---

William C. Hirsch, Smith & Kircher, Cincinnati, Ohio, for defendant-appellant.

Andrew T. Jones, Power, Jones & Schneider, Marion, Ohio, for plaintiff-appellee.

Before LIVELY and MARTIN, Circuit Judges, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

Defendant, Communications Workers of America, AFL–CIO (Union), appealed a judgment rendered in the District Court confirming in part and vacating in part an arbitrator's award. The record reflects that the Union filed a grievance on behalf of John Evans, an employee of plaintiff, General Telephone Co. of Ohio since November 16, 1970. At this time, Evans was assigned to the reporting center, a telephone exchange, in Gibsonburg, Ohio. Until May 30, 1975, Evans was allowed to report each morning by placing a telephone call from Bloomville, Ohio, where he resided, rather than physically reporting in person to Gibsonburg. Effective May 30, 1975, however, the plaintiff Company changed this policy and required that he physically report each morning in Gibsonburg.

After being so required to physically report to the reporting center in Gibsonburg, rather than simply reporting by telephone, Evans requested plaintiff Company to pay his moving expenses to move from Bloomville to Gibsonburg. He requested these payments for moving expenses pursuant to the terms of the contract between defendant Union and plaintiff Employer. Article 9, Section 3.1 of that contract provides in part:

> Costs of moving to new work locations will be assumed by the Company.

The Company rejected Evans' request for the payment of moving expenses primarily on the ground that only Evans' reporting center had been changed, not his work location. Evans has continued to work the exchanges comprising the Gibsonburg Area as an installer-repairman. Secondly, the Company rejected the payment of moving expenses on the basis that Evans did not, in fact, move from Bloomville to Gibsonburg, and had, therefore, waived his right to claim moving expenses by not moving within a reasonable time after May 30, 1975, the date he was reassigned.

The Union then filed a grievance on behalf of Evans with the Company on June 10, 1975.

### A. The Opinion And Award Of The Arbitrator

In an opinion and award of May 29, 1976, the arbitrator hearing the grievance rejected the Company's argument that Evans had waived any right to moving expenses because he had not, in fact, moved to Gibsonburg. The arbitrator reasoned that "What controls is that he asked promptly for moving expenses, and both he and the Union are currently obviously prosecuting the grievance actively."

The arbitrator then held that under Article 9, Section 3.1, the Company was clearly obligated to pay moving expenses in connection with involuntary transfers from one exchange to another exchange. The arbitrator stated that

> For many purposes, viewed from the employees' vantage point in particular, there is little actual difference between an exchange and a reporting center. For one thing, employees reporting in to each regularly worked there or out of there. A significant factor is that in those cases, commuting distance from their residence to their center or an exchange is significant. No reason is shown for paying for moving in one instance and not the other. While the Reporting Center Section (of the Collective Bargaining Agreement) does not expressly cover Reporting Center moving, it does not negate that they are comparable, and may not properly both be, covered under the clause and both be subject to payment of moving expenses. Finally, if terms as here of a contract are not expressed, it is proper to imply provisions consistent with other sections of the contract and operations in general. Reporting centers and exchanges are very similar from the standpoint of moving costs and payment of moving costs should be the same, as to each.

Accordingly, the arbitrator ordered the Company to pay " * * * under its policy, moving expenses if the grievant shall decide to move, and as long as he determines not to move, he shall receive mileage expense, each on the same basis that other employees are paid moving or mileage expenses, plus mileage expenses from the date of his transfer also based on Company policy."

### B. Initial Decision Of The District Court

On June 21, 1976, the Employer Company filed an action in the Common Pleas Court of Marion County, Ohio, to vacate the arbitrator's award. The Union, named as a defendant in the action, removed the action to the United States District Court for the Northern District of Ohio. In an order of April 19, 1978, the District Court stated that the Court

> * * * cannot find that the construction of the Collective Bargaining Agreement by the arbitrator here demonstrates a clear infidelity to the terms of the Collective Bargaining Agreement, or lacks "foundation and reason or fact" so as not to be derived from the "wording or purpose of the Agreement". The interpretation provided is "a plausible interpretation" of the Agreement. The decision of the arbitrator in this regard, therefore, must be upheld.

The District Court, however, held that the arbitrator's actual award of monetary relief was ambiguous. The Court, therefore, ordered that the parties resubmit the grievance to the arbitrator for clarification and interpretation of the remedy provisions of the award so that the District Court could then consider whether the remedy imposed was within the authority of the arbitrator or contrary to the Collective Bargaining Agreement.

### C. The Arbitrator's Clarifying Award

In response to the District Court's order, the arbitrator issued the following clarifying award:

> The arbitrator directs that the company notify the grieving employee that it will pay him the costs of moving his household goods and furnishings and also the

associated costs of their moving, that it will in addition pay him a round trip mileage and other allowance during a reasonable period of at least six weeks from the moving necessary to effect his move, and that it shall also pay him the total daily mileage expenses incurred by the grievant since its refusal to pay his moving costs and expenses. This allowance or daily mileage expense shall be calculated on the bases of $.15 a mile, at 80 miles per day, for each day the grieving employee has worked, easily determined from company records, during the pendency of this grievance and arbitration procedures since the refusal to pay his moving costs and expenses.

November 6, 1978

### D. Final Order Of The District Court Now On Appeal

On May 9, 1979, the District Court filed the order now the subject of this appeal. The District Court confirmed the arbitrator's award entitling Evans to his costs of moving.

The District Court, however, denied the arbitrator's award dealing with the allowance of a daily mileage charge caused by Evans' driving from Bloomville to Gibsonburg. The District Court reasoned that

No Company practice, policy or procedure has been shown by either the plaintiff or defendant here which would allow expenses for travel to and from an assignment place as the arbitrator awarded here. Only travel to and from a temporary assignment, which is not the situation here, would warrant payment for mileage.

Neither did the District Court feel the Collective Bargaining Agreement provided allowance of mileage expenses. Accordingly, the Union now appeals the District Court's holding that the arbitrator exceeded his contractual authorization by awarding Evans mileage expenses.

### ISSUE

**Whether The District Court Erred In Holding That The Arbitrator Exceeded His Authority Under The Collective Bargaining Agreement By Awarding Mileage Expenses?**

### A. Applicable Provisions Of The Agreement

The relevant sections of the Collective Bargaining Agreement are reproduced as an Appendix to this Opinion.

The most crucial provisions of the contract are Article 9, Section 3.1 relating to involuntary transfers, Article 22, Section 9 relating to jurisdiction, and Article 22, Section 10 relating to the authority of the arbitrator. Article 9, Section 3.1 provides as follows:

Employees selected for involuntary transfer from one exchange to another shall be chosen on the basis of least seniority to the extent that ability and qualifications are consistent with the demands of the job to be filled. *Costs of moving to new work locations will be assumed by the Company.* (Emphasis supplied)

Article 22, Section 9 provides:

The Board of Arbitration shall have jurisdiction to rule according to the merits of the case before it and shall have the authority to interpret, apply, or determine compliance with the provisions of this Agreement or of any agreement made supplementary hereto and render decision of award thereof. No award made shall, however, serve to add to, substract (sic) from, or modify, or alter in any way any of the provisions of this Agreement nor of any of the established routines, rules, or practices of the Company which are not inconsistant (sic) with the provisions of this Agreement. The Board of Arbitration also shall be limited in its authority to a review and determination of the specific grievance submitted for arbitration.

Article 22, Section 10 of the Agreement provides:

The Arbitration Board shall have authority to include in its award an order for money restitution to an employee * * * where improper payment, or failure to make proper payment is a point at issue.

However, no authority shall otherwise rest with the Arbitration Board to include in any award an order for payment of money from one party of the Agreement to the other, not to assess damage or punitive payments against either party to the other.

## B. Arguments Of The Employer Company And The Union

In this appeal, the Employer Company does not challenge that portion of the arbitrator's award which entitles Evans to his costs of moving to Gibsonburg. The Company does challenge the arbitrator's award of mileage expenses incurred by Evans for his daily travel from his home in Bloomville to Gibsonburg between the time the Company refused to pay Evans' moving costs and the time when the Company notified Evans that it would pay those moving costs.

The Company argues that the arbitrator exceeded his contractual authority in awarding the mileage expenses because 1) the arbitrator is limited to those remedies specifically authorized by specific provisions of the Collective Bargaining Agreement; and 2) Article 22, Section 10 of the Agreement prohibits mileage expenses; and 3) the award of mileage expenses is "punitive" within the meaning of Article 22, Section 10.

The Union argues that the arbitrator is not limited to awards specifically enumerated by the Agreement; that Article 22, Section 10 is not a limitation upon the arbitrator's authority to fashion relief; and that the mileage award was not punitive in nature, but compensatory.

## C. Standard Of Judicial Review Of An Arbitrators's Award

Both statutory and case law make clear that reviewing courts have an extremely narrow role in options such as the one now before this Court to set aside an award of an arbitrator pursuant to the binding arbitration provisions of a Collective Bargaining Agreement. The relevant statute, Title 9 U.S.C., Section 10 provides that Federal Courts may vacate such an award only

(a) Where the award was procured by corruption, fraud, or undue means.

(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(e) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.

With respect to case law, the Supreme Court has held that it is not the function of a reviewing court to substitute that court's interpretation of a Collective Bargaining Agreement for that of the arbitrator. In *United Steelworkers of America v. Enterprise Wheel and Car Corporation*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), the Court specifically noted that

\* \* \* the question of interpretation of the Collective Bargaining Agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; insofar as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his. Id at 599, 80 S.Ct. at 1362.

With respect to an arbitrator's authority to fashion a remedy, the Supreme Court further declared that

When an arbitrator is commissioned to interpret and apply the Collective Bargaining Agreement he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formu-

lating remedies. There is a need for flexibility in meeting a wide variety of situations. The draftsmen (of the contract) may never have thought of the specific remedy to be awarded to meet a particular contingency. Id at 597, 80 S.Ct. at 1361.

This Court, in *Timken Co. v. Local U. No. 1123, United Steelworkers of America*, 482 F.2d 1012 (Sixth Cir. 1973), has accordingly recognized that

> * * * unless the awards manifest a clear infidelity to the arbitrator's obligation of drawing the "essence" of the award from the bargaining agreement, a court must refuse to substitute its judgment on the merits for that of the arbitrator. Id. at 1014.

No case cited by the Employer-Company in any way lessens the mandate of these cases. That mandate clearly is that in interpreting a collective bargaining agreement and in fashioning a remedy in accordance with that agreement, an arbitrator is given broad latitude and discretion. His remedy need not be specifically authorized by the agreement. And, so long as his remedy represents a fair solution to the dispute, the remedy awarded should be affirmed. Reviewing courts should be extremely reluctant to substitute their interpretation of the agreement for that of the arbitrator.

Cases relied upon by the Employer-Company are cases of arbitrators clearly exceeding their contractual authority. Even those cases relied upon by the Employer, however, recognize that while the powers of an arbitrator are not unlimited, his awards should be upheld so long as he does not disregard or modify plain and unambiguous provisions of a collective bargaining agreement. See, e. g. *Monongahela Power Company v. Local No. 2332, IBEW*, 566 F.2d 1196 (4th Cir. 1976). And the Employer also concedes the binding effect upon this Court of the proposition that an arbitrator's award is legitimate if " * * * it draws its essence from the collective bargaining agreement." See *Timken Company v. Local No. 1123, United Steelworkers of America, supra.*

## CONCLUSION

It is concluded that the district court's action in vacating the arbitrator's award of mileage expenses is contrary to statutory and case authority which controlled that court's standard of review. In *United Steelworkers, supra*, the Supreme Court recognized the need for allowing arbitrators discretion and flexibility in formulating remedies because of the "wide variety of situations" presented for arbitration. According to that decision, the fact that the authors of the Collective Bargaining Agreement " * * * may never have thought of the specific remedy to be awarded to meet a particular contingency" would not be sufficient to set aside an arbitrator's award. And since it cannot be said that the award in this case " * * * manifests a clear infidelity to the arbitrator's obligation of drawing the 'essence' of the award from the Bargaining Agreement", it is concluded that the district court erred by substituting its judgment on the merits for that of the arbitrator.

It is ordered that that part of the judgment of the District Court affirming the award of the arbitrator allowing moving expenses be affirmed, and that the judgment of the District Court denying the arbitrator's award of traveling expenses be reversed and vacated.

Accordingly, it is ordered that the case be remanded to the District Court with instructions to vacate the judgment denying the award of the arbitrator for the payment of traveling expenses and that a judgment be issued enforcing the award of the arbitrator in its entirety.

### APPENDIX

Contract Sections Involved

A. Contract Sections relating to a change in reporting centers:

Article 4, Section 14.1, page 23

Section 14. Board and Lodging Treatment 14.1 Reporting. All employees shall be assigned to definite reporting centers.

Article 20, Section 1, Section 2, page 56

## Article 20
### Management Responsibilities

Section 1. Management Functions. Nothing contained in this Agreement shall be deemed to limit the company in any way in the exercise of the regular and generally recognized customary functions and responsibilities of Management as may be mentioned or referred to herein shall not be deemed to exclude other functions of Management not specifically included herein.

Section 2. Service Standards. The right of the Company to establish, determine, maintain and enforce standards of telephone service is fully recognized. The Company shall not be required to meet established work standards. A regular employee who becomes physically incapable of meeting established work standards shall be transferred to work he is physically capable of performing whenever practical.

B. Contract Sections relating to when the company may fill job vacancies by involuntary transfer, and the assumption by the company of an employee's costs of moving to new work location in such instances:

Article 9, Sections 2.1, 2.1.1, 2.1.2, page 34
Section 2. Job Posting

2.1 When filling a vacancy within the bargaining unit, the Company will post, for a period of ten calendar days, notice of such impending action on the bulletin boards in the district in which the job is to be filled.

2.1.1 The Company will recognize and give consideration to transfer requests filed by employees on the form provided by the Union.

2.1.2 The following are considered as entrance jobs and not subject to job posting or bidding procedure, operator, clerk, groundworker, lineworker, frameworker, custodian, state central office equipment installer-repairer, storeroom attendant, surveyor helper, surveyor, draftperson and paystation collector.

Article 9, Sections 2.7, 217.1 (sic), 2.7.3, pages 35, 36

2.7 Selection shall be based on seniority among those bidding employees whose ability and qualifications are consistent with the job to be filled. If more than one employee has qualifications for the job seniority will govern. An employee may apply for, but shall not have a right to transfer until he has occupied his present position at the same location for at least 9 consecutive months.

2.7.1 First consideration will be given to the applicants of the district within which the vacancy exists.

2.7.2 In the event that a qualified employee is not available among bidding employees within the district, applicants from other district, who have submitted bids in response to Union posting of the job notice, or who have previously otherwise notified the Company in writing of their desires, shall be considered.

2.7.3 It is understood and agreed that the Company reserves the right to select or employ individuals from outside the Company where services requiring special training or special abilities not available in the Company are required.

Article 9, Section 2.8, page 36

2.8 Job vacancies not filled on the basis of Paragraph 2.7.1 and 2.7.2 will be filled by the Company optionally by involuntary transfer in accordance with Section 3 of Article 9, or by new hire as may be required to obtain the necessary qualifications.

Article 9, Sections 3, 3.1, 3.2, 3.3, page 36
Section 3. Involuntary Transfers

3.1 Employees selected for involuntary transfer from one exchange to another shall be chosen on the basis of least seniority to the extent that ability and qualifications are consistent with the demands of the job to be filled. Costs of moving to new work locations will be assumed by the Company.

3.2 When opportunity arises, an employee involuntarily transferred by the

Company in accordance with the foregoing Paragraph 3.1 of this Section shall be afforded an opportunity to retransfer to his former job or to another job for which he is qualified at the first exchange from which he was transferred. The retransfer shall be afforded in accord with seniority limited only by necessary considerations of telephone service requirements.

3.3 The Company will neither engage a new employee nor reengage a former employee with less seniority than the employee involuntarily transferred under the provisions of the foregoing Paragraph 3.1 of this Section for a job which the involuntarily transferred employee can fill in accord with Paragraph 3.2 of this Section.

C. Contract Sections relating to a reduction in forces in any exchange and the assumption by the employee of costs of moving to the new exchange when an employee is laid off by the Company and exercises transfer rights:

Article 12, Section 1, page 41

### Article 12
### Force Adjustment and Lay Off

Section 1. Local Force Adjustments. Whenever conditions in any exchange require a reduction in forces in one or more title classifications, such reductions shall be in accordance with the following.

Article 12, Section 3, page 42

Section 3. Transfer Rights. An employee with one or more years of seniority who is notified that, through force reduction, employment cannot be continued in the present job, shall have job transfer rights. Transfer may be to a job within the bargaining unit in the same title classification but in another location, or to a job in the same title classification in another location, or to a job in another title classification. In the latter instance the employee must have previously performed it satisfactorily, can still perform it satisfactorily, and the job is held by a less senior employee. · An employee may also transfer to a job in another title classification within the bargaining unit, not previously held within the Company, but which job he may be qualified to perform by previous experience and training. Employees with requesite (sic) seniority may transfer into the entrance jobs of custodian, storeroom attendant, and frameworker provided that there are no jobs within the District for which they are qualified.

Article 12, Section 3.4 page 43

3.4 When an employee exercises an option under Section 3 requiring relocation to another exchange, the Company may select the exchange where operating factors become a matter for consideration. Costs of moving to the new exchange will be assumed by the employee.

D. Contract sections prohibiting the arbitrator from adding to, modifying, or altering, the labor agreement or any established routines, rules, or practices of the Company which are not inconsistent with the provisions of the Agreement:

Article 22, Section 9, page 62

Section 9. Jurisdiction. The Board of Arbitration shall have jurisdiction to rule according to the merits of the case before it and shall have the authority to interpret, apply, or determine compliance with the provisions of this Agreement or of any agreement made supplementary hereto and render decision of award thereof. No award made shall, however, serve to add to, substract (sic) from, or modify, or alter in any way any of the provisions of this Agreement nor of any of the established routines, rules, or practices of the Company which are not inconsistant (sic) with the provisions of this Agreement. The Board of Arbitration also shall be limited in its authority to a review and determination of the specific grievance submitted for arbitration.

E. Contract sections prohibiting the remedy of damages requested by the grievant in this case:

Article 22, Section 10, page 62

**460**

Section 10. Restitution. The Arbitration Board shall have authority to include in its award an order for money restitution to an employee, or employee where improper payment, or failure to make proper payment, is a point at issue. However, no authority shall otherwise rest with the Arbitration Board to include in any award an order for payment of money from one party of the Agreement to the other, nor to assess damage or punitive payments against either party to the other.