### GEORGE CAMPBELL PAINTING CORPORATION

v.

### BROTHERHOOD OF PAINTERS & ALLIED TRADES, DISTRICT COUNCIL NO. 21, the Associated Master Painters & Decorators of Philadelphia, Inc., and the Joint Trade Board.

Civ. A. No. 78–2681.

United States District Court, E. D. Pennsylvania.

Nov. 5, 1979.

---

Robert J. Leitzel, Alvin S. Ackerman, Upper Darby, Pa., for plaintiff.

Bruce E. Endy, Philadelphia, Pa., John J. McAleese, Jr., Bala Cynwyd, Pa., for defendant.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

By this action under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, the George Campbell Painting Company (Campbell) seeks to compel arbitration of a labor dispute with defendant District Council No. 21 (Union) and to vacate an arbitrator's decision that the merits of their dispute are not arbitrable. The Union has counterclaimed for enforcement of the arbitration award which declared "due and owing" a total of $20,000 in fines assessed against Campbell at an earlier stage in the grievance process. As it does not appear with reasonable certainty that no triable issue of fact exists with respect to the threshold issue of arbitrability, the cross-motions for summary judgment will be denied.

The facts surrounding the underlying dispute are not contested and may be briefly summarized. In 1975, Campbell, a New York corporation, was engaged to paint the Benjamin Franklin Bridge which extends from Philadelphia to Camden, New Jersey. Campbell hired local painters for the job and agreed to be bound by the terms of the Master Agreement negotiated between the Union and the local painting contractors' association, the Associated Master Painters and Decorators of Philadelphia, Inc. As the work progressed Union representatives objected to Campbell's use of spray painting equipment, claiming that the spraying exceeded what the Master Agreement would permit. The Joint Trade Board (JTB), composed of an equal number of representatives from the Union and the local employers' group, upheld the Union's charges and fined Campbell $10,000 on two separate occasions. When Campbell refused to pay, the Union engaged in a work stoppage which Campbell claimed violated the collective bargaining agreement.

Based on an agreement, the intent of which is now keenly disputed, Campbell and the Union decided to submit their differ-

ences to a neutral arbitrator. That the parties entered into *some* kind of agreement beyond the terms of their collective bargaining agreement is apparent from the arbitration clause found in the Master Agreement. That provision, Article 22, provides in relevant part:

### ARTICLE 22

### Arbitration

*Jurisdiction and Procedure* : All complaints, disputes, controversies, claims or grievances (hereinafter referred to as a dispute) arising between the parties to this Agreement involving questions of interpretation, application, or breach of any part of this Agreement, or arising out of the contractual relations between the parties and their respective members shall, in the first instance, be referred to a committee or committees appointed for this purpose by the parties hereto. If they are unable to resolve the dispute, it shall be referred to a Joint Trade Board, which Board shall consist of three (3) members appointed by the COUNCIL and three (3) members appointed by the EMPLOYER, *the majority decision of which shall be final and binding upon the parties to this Agreement.*

\* \* \* \* \* \*

*Should the Joint Trade Board be unable to reach a resolution of the dispute and render a decision within forty-eight (48) hours,* either of the parties may request the American Arbitration Association to submit a panel of Arbitrators from whom the parties shall select an Impartial Chairman in accordance with the Rules and Regulations of the American Arbitration Association to hear the dispute. The decision of the Impartial Chairman shall be final and binding upon all parties to the proceedings and to this Agreement. (Emphasis added).[1]

\* \* \* \* \* \*

On its face, Article 22 does not authorize *any* submission to an arbitrator if, as in this case, a decision is reached at the intermediate JTB level. Furthermore, the transcript of the arbitration reveals that the simple existence of a side agreement beyond Article 22 was common ground between the parties; what was contested was the substance of the parties' undertakings.

Before the arbitrator the Union insisted that it had agreed to submit to arbitration only the limited question of the procedural validity of the JTB award. If the arbitrator found the JTB procedure adequate, according to the Union, his duty was to uphold the previous awards and not to inquire into the merits of the underlying disputes. Campbell argued, just as vigorously, that the side agreement was to submit the spray and work stoppage disputes for binding arbitration on the merits. After a lengthy set of hearings, the arbitrator accepted the Union view of his authority and went on to approve the JTB fines on procedural grounds.[2]

The threshold and practically dispositive question in this case is what the parties agreed to arbitrate. If the arbitrator's narrow view of his authority was correct, then his decision on the merits—the procedural endorsement of the JTB awards—is not subject to serious judicial review. *United Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Co.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), (the Steelworkers Trilogy);

---

1. Although this clause could be read otherwise, it appears from minutes of several JTB meetings (plaintiff's Exhibit K) that the employer representatives on the Board are standing members appointed by the local employers' association, rather than by the individual employer involved in a dispute. This practice is modified when, as in this case, an employer not a member of the association is charged with a violation. In that case the non-member employer may replace one standing member of the JTB with a non-member employer of his choice.

2. Because of a procedural infirmity, the first fine was remanded to the JTB which then reimposed the penalty. The arbitrator later affirmed the reinstated fine.

*Ludwig Honold Manufacturing Co. v. Fletcher,* 405 F.2d 1123 (3d Cir. 1969). If, however, the arbitrator erred in rejecting Campbell's more generous construction of his authority, then the plaintiff is entitled to enforcement of its agreement to arbitrate the merits of the dispute. In that event, this case is not significantly different from the more common pre-arbitration § 301 action to compel a reluctant party to submit to arbitration.

Because an arbitrator's threshold determination of "jurisdiction" ordinarily requires interpretation of the collective bargaining agreement, it might be thought that courts are bound to give the same respect to an arbitrator's reading of the arbitration clause as to his reading of substantive contract provisions. In this case, indeed, both parties seem to assume that the arbitrator's framing of the issues is due the same deference as is his decision on the merits. Yet, the two determinations stand on radically different footings before this court. The Supreme Court has held repeatedly that the issue of arbitrability—as distinct from the merits of an arbitrable dispute—is for the court to determine. *International Union of Operating Engineers v. Flair Builders, Inc.,* 406 U.S. 487, 491, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972); *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 546–47, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *Humphrey v. Moore,* 375 U.S. 335, 345 n. 8, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); *Drake Bakeries, Inc. v. Local 50, American Bakery & Confectionery Workers,* 370 U.S. 254, 256, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962); *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). *See International Brotherhood of Teamsters v. Western Pennsylvania Motor Carriers Association,* 574 F.2d 783, 787 (3d Cir. 1978), cert. denied, 439 U.S. 828, 99 S.Ct. 102, 58 L.Ed.2d 122 (1978); *Local 719, American Bakery & Confectionery Workers v. National Biscuit Co.,* 378 F.2d 918, 921 (3d Cir. 1967).

■ Arbitrability comprehends not only whether the parties agreed to arbitrate but also the scope of the promise to arbitrate—the issues for submission. *See Flair Builders, supra,* 406 U.S. at 491, 92 S.Ct. 1710. "Under our decisions, whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties." *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962). The dispute in the present case is plainly over the issues for arbitration: the Union contends that the parties agreed to arbitrate the procedural validity of the JTB award; Campbell contends that they agreed to arbitrate the merits of the spray painting and work stoppage disputes. Resolution of these conflicting contentions is the province of the court and that allocation of responsibility is not disturbed by the post-arbitration posture of this case. "Under federal labor law, we think that this 'jurisdictional' question is a proper one for the courts, just as it would be if the question before us were whether or not a given dispute should go to arbitration." *Bieski v. Eastern Automobile Forwarding Co.,* 396 F.2d 32, 41 (3d Cir. 1968).

■ There are three recognized exceptions to the general proposition that arbitrability is for the court, none of which is applicable here. The first such exception applies where the arbitrability issue unavoidably implicates the merits of the underlying controversy. *See United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 585, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). No such "back door" problem is present here because interpretation of the parties' side agreement does not require interpretation of the substantive provisions of the contract. A second closely related concern is that questions of "procedural arbitrability" will provide a convenient device to undermine an arbitrator's decision on the merits. *See, John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 557–58, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *Controlled Sanitation Corp. v. District 128,*

*International Association of Machinists*, 524 F.2d 1324, 1329–32 (3d Cir. 1975), *cert. denied*, 424 U.S. 915, 96 S.Ct. 1114, 47 L.Ed.2d 319 (1976). Although the dispute in this case could conceivably evolve into a debate over procedural arbitrability, that question does not arise until the issue of what the parties agreed to arbitrate is resolved. *Halstead Industries, Inc. v. United Steelworkers of America*, 432 F.Supp. 109, 113 (W.D.Pa. 1977). The arbitrability question at this stage of the litigation is indisputably "substantive". A third exception to the general rule permits the parties to reserve the question of arbitrability to the arbitrator by a "clear demonstration of that purpose". *Warrior & Gulf, supra*, 363 U.S. at 583 n. 7, 80 S.Ct. 1347. No such reservation is claimed by either party, nor does it appear from the record that one was attempted.

It is the duty of this court to undertake an independent evaluation of the agreement of the parties to determine arbitrability.

> If, . . . the private decision complained of is a "jurisdictional" one—that a certain dispute will not be considered on its merits by the private decisionmaker—then the court is a proper forum to review this decision on the basis of its analysis of the contract entered into by the parties.

*Bieski, supra*, 396 F.2d at 38. *See Teamsters, supra*, 574 F.2d at 788. As Justice Brennan, joined by Justice Harlan, observed in oft-quoted language, the agreement to arbitrate is nothing more nor less than a contract.

> To be sure, since arbitration is a creature of contract, a court must always inquire, when a party seeks to invoke its aid to force a reluctant party to the arbitration table, whether the parties have agreed to arbitrate the particular dispute. In this sense, the question of whether a dispute is "arbitrable" is inescapably for the court.

*United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 570–71, 80 S.Ct. 1343, 1364, 4 L.Ed.2d 1403 (1960) (opinion of Brennan, J., concurring).

Summary judgment is plainly not appropriate in light of the parties' divergence over the meaning of their side agreement. *See Torrington Co. v. Metal Products Workers Union, Local 1645*, 347 F.2d 93, 95 (2d Cir.), *cert. denied*, 382 U.S. 940, 86 S.Ct. 394, 15 L.Ed.2d 351 (1965); *Aberle Hosiery Co. v. American Arbitration Association*, 337 F.Supp. 90, 93 (E.D.Pa.), *appeal dismissed*, 461 F.2d 1005 (3d Cir. 1972). Given this court's obligation to construe independently the arbitration agreement, I cannot simply rely on the evidence considered by the arbitrator. In addition to arbitrability, the question whether the company waived the arbitrability issue may also be illuminated by further factual development. *See H. K. Porter Co. v. United Saw, File & Steel Products Workers*, 406 F.2d 643 (3d Cir. 1969); *Local 719, American Bakery & Confectionery Workers v. National Biscuit Co.*, 378 F.2d 918 (3d Cir. 1967). For the foregoing reasons the cross-motions for summary judgment are denied.