## Rizzo v. New Jersey Manufacturers Insurance Co.

*Frederic Rubin,* for plaintiffs.
*David N. Hofstein,* for defendant.

RUFE, *J.,* January 29, 1981—This motion to compel arbitration is before the court for disposition pursuant to B.C.R.C.P. *266. The relevant allegations are as follows.

The petition alleges that on April 5, 1977 Katherine Rizzo was operating a 1972 Oldsmobile coupe (serial number 133036), with her daughter Linda as a passenger, when the vehicle collided with two other automobiles at the intersection of U.S. Route 1 and Lower Morrisville Road in Falls Township, Bucks County, Pa. It is alleged that the collision resulted in serious bodily injuries to both Katherine Rizzo and Linda Rizzo.

Albert Rizzo is the husband of Katherine Rizzo and the father of Linda Rizzo. (Hereinafter the three Rizzos will be referred to as petitioners.) Petitioners allege that the two other vehicles involved in the April 5, 1977 accident and their drivers, Sharon Bocken and Helen Murray, were insured by the Safeguard Mutual Insurance Company which was subsequently required to suspend its operations pending the outcome of insolvency proceedings instituted by the Pennsylvania Insurance Commissioner. This total suspension of the business of the Safeguard Mutual Insurance Company led to an order on August 15, 1979 by the Honorable Paul R. Beckert, President Judge, which stayed all cases in

Bucks County in which Safeguard Mutual Insurance Company or its insureds are parties.

At the time of the accident there were two policies in effect which insured Rizzo cars, to wit, policy FA-370390-7 (hereinafter F) which specifically covered the Oldsmobile and policy BA-275729-2 (hereinafter B) which did not. Both policies were written by New Jersey Manufacturers Insurance Company (hereinafter respondent) and each contained an uninsured motorist clause. Based on the stay order entered by Judge Beckert on August 15, 1979 petitioners concluded that Bocken and Murray were uninsured motorists as defined by their policies. Respondents did not agree, so on July 24, 1979 petitioners gave written notice to respondent of their demand for arbitration pursuant to a clause which provided for arbitration if an insured and respondent disagreed as to whether the insured was entitled to uninsured motorists benefits. Pursuant to policy F which provided that arbitration would be conducted in accordance with the provisions of the Pennsylvania Arbitration Act of April 25, 1927, P.L. 381, 5 P.S. § 161 et seq., petitioners chose an arbitrator, but respondents refused to do so.* Petitioners then filed a petition and subsequently an amended petition for a rule to show cause why arbitration should not proceed pursuant to the act. The rule was made returnable and respondent answered with new matter. After replying to respondents' new matter, petitioners moved for disposition of their petition pursuant to B.C.R.C.P. *266.

---

*Policy B, unlike F, provides that disputes vis-a-vis uninsured motorist coverage should be settled by arbitration conducted under the Rules of the American Arbitration Association unless the parties agree to another means of arbitration. However, petitioners request that any arbitration conducted pursuant to policy B be conducted under the Rules of the Penn-

The sole issue to be decided in the present case is whether under the terms of the arbitration clause of the insurance policies this matter is arbitrable and should be ordered to arbitration. For the reasons enunciated below, we answer in the affirmative.

Preliminarily, we recognize that arbitration is a matter of contract, Wolf v. Baltimore, 250 Pa. Superior Ct. 230, 378 A. 2d 911 (1977), and whether a particular matter is open for arbitration is to be determined by the court from a reading of the contract: Women's Society for Prevention of Cruelty to Animals of Pennsylvania v. Savage, 440 Pa. 34, 269 A. 2d 888 (1970); George Campbell Painting Corp. v. Brotherhood of Painters & Allied Trades, District Council No. 21, 480 F. Supp. 120 (E.D. Pa. 1979). Once the court has determined that a particular issue is arbitrable, it is then for the arbitrators to dispose of the merits of the dispute: United Services Automobile Association Appeal, 227 Pa. Superior Ct. 508, 323 A. 2d 737 (1974); George Campbell Painting Corp. v. Brotherhood of Painters & Allied Trades, District Council No. 21, supra. See, also, Gordon v. Keystone Insurance Co., _____ Pa. Superior Ct. _____, 419 A. 2d 730 (1980).

The clauses in policies F and B which provide for the arbitration of disputes concerning uninsured motorist coverage are substantially alike. The arbitration clause in policy F provides, inter alia:

Arbitration. If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from or of an uninsured highway vehicle because of bodily injury

sylvania Arbitration Act of 1927. Respondent does not oppose the use of the procedures of the Pennsylvania Arbitration Act of 1927 if the court directs arbitration pursuant to policy B. Therefore, any arbitration directed pursuant to policy B will be done in accord with the Pennsylvania Arbitration Act of 1927.

to the insured, or do not agree as to the amount of payment which may be owing under this insurance, the matter or matters upon which such person and the company do not agree shall be settled by arbitration. . . .

In policy B the arbitration clause states, inter alia:

If any person making claim hereunder and the company do not agree that such peson is legally entitled to recover damages from the owner or operator of an uninsured highway vehicle because of bodily injury or property damage to the insured, or do not agree as to the amount of payment which may be owing under this insurance, then, upon written demand of either, the matter or matters upon which such person and the company do not agree shall be settled by arbitration. . . .

Respondent claims that these clauses limit the use of arbitration "to disputes concerning the ability of the petitioners to recover damages from the owner or operator of an 'uninsured' vehicle or disputes concerning the amount of payment due under the uninsured motorist provisions of the policy." (Respondent's brief, p. 6). We do not agree.

In National Grange Mutual Insurance Co. v. Kuhn, 428 Pa. 179, 236 A. 2d 758 (1968), the court was faced with a problem similar to the present case. Appellant had suffered injuries in an automobile accident while riding in a car covered by the appellee insurance company. The car by which the appellant's car was hit was driven by Doyle, who was uninsured. When the appellant notified the appellee of his uninsured motorist claim, the appellee denied that Doyle was uninsured and refused to submit to arbitration pursuant to the policy's arbitration clause which provided, inter alia:

"'Arbitration. If any person making claim under the Uninsured Motorists Coverage and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured highway vehicle because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing thereunder, then, upon the written demand of either, the matter or matters upon which such person and the company do not agree shall be settled by arbitration. . . .'" Id. at 182, 236 A. 2d at 759.

The new lower court agreed with the appellee that the language of the arbitration clause did not contemplate arbitration of whether Doyle was an uninsured motorist.

However, on appeal, the Supreme Court reversed. In ruling that the arbitration clause did provide for the arbitration of the dispute, the court wrote:

"[C]ourt proceedings should not be read into the agreement to arbitrate. We believe that the policy language expresses the agreement of the parties to submit the 'matter or matters' in dispute between them, relative to the protection against uninsured motorists provision of the policy, to determination by arbitration. The arbitration clause, in our view, indicates that the parties contemplated one method, and one method only, for the resolution of disputes under this coverage. That method was arbitration and all such suits should be so decided." Id. at 185, 236 A. 2d at 760-761.

In reaching this conclusion, the court reasoned that because the policy language was the company's it could, if it desired, alter the language of the policy to expressly limit the issues that would be arbitrable.

Respondent attempts to distinguish Kuhn from

the present case. In Kuhn, they argue, the issue was whether Doyle, the tortfeasor, had any insurance, while in the instant case, the question is whether Safeguard is solvent. However, we do not believe that that is an accurate statement of the issue. In the instant case the issue to be decided by the arbitrators is not whether Safeguard is insolvent, but whether under the terms of respondent's insurance policies Safeguard's insureds, Bocken and Murray, are uninsured due to the stay of all actions in which Safeguard is involved.

Respondent also contends that the issue in the present case is identical to that in Stephen v. Nationwide Insurance Co., 2 Phila. 129 (1979), a case in which the court refused to submit a dispute to arbitration. However, respondent's contention is simply without merit. The issue in Stephen was whether an insured, who had already collected from the tortfeasor's insurance company the full amount of the tortfeasor's coverage, could then collect under the uninsured motorist clause of his own policy for additional medical expenses. The court ruled in the negative stating that "uninsured" and "underinsured" were not identical concepts.

Respondent suggests that as a matter of law there is no merit to petitioners' claim that Bocken and Murray are uninsured and the issue should therefore be decided by the court. We do not agree, and we rule that this is a matter for the arbitrators to decide.

Finally, respondent contends that public policy considerations require a judicial determination of the uninsured status of the tortfeasors. Respondent claims that petitioners are requesting the arbitrators to ignore the stay order and decide whether Safeguard is insolvent. That is not the case. During

the arbitration, the arbitrators will be asked whether the stay order has the effect of rendering Bocken and Murray uninsured motorists within the meaning of the policy or the policies covering petitioners. Such a decision will not offend public policy in any way.

In conclusion, we find that the arbitration clauses in policy F and policy B contemplated the arbitration of a dispute such as the present one. Therefore, we will order the matter to be submitted to arbitration under the Rules of the Pennsylvania Arbitration Act of 1927 to determine if either policy is applicable in the present matter, and whether Sharon Bocken and Helen Murray are uninsured motorists under the facts of this case.

## ORDER

And now, January 29, 1981, the court finding that the parties entered into written arbitration agreements which permit arbitration of the disputes in question, it is hereby ordered and decreed that the petition in the above-captioned case is granted and respondent is ordered to appoint an arbitrator who shall consult with the arbitrator appointed by petitioners in order that the two arbitrators may appoint a third arbitrator. If respondent fails to designate an arbitrator within 30 days of this order, the court will appoint an arbitrator upon notification by petitioners' counsel of respondent's failure to designate an arbitrator.

The arbitration shall be conducted pursuant to the procedures provided in The Pennsylvania Arbitration Act of 1927, 5 P.S. § 161 et seq. The arbitrators shall specifically address and make findings as to whether, inter alia:

(1) Petitioners were covered by policy FA-370390-7 and/or policy BA-275729-2 issued by respondent;

(2) Sharon Bocken and Helen Murray were uninsured motorists within the meaning of the uninsured motorist clause of any applicable policy; and

(3) Whether petitioners are entitled to any compensation from respondent.