**UNITED STEELWORKERS OF AMERI-CA, AFL–CIO–CLC; United Steelworkers of America, AFL–CIO–CLC, Local 1123; Albert A. DeAngelis, Plaintiffs-Appellants,**

v.

**The TIMKEN COMPANY, Defendant-Appellee.**

No. 82–3213.

United States Court of Appeals, Sixth Circuit.

Argued May 4, 1983.

Decided Sept. 28, 1983.

**15.** F.R.Civ.P. 61; *Clegg v. Hardware Mutual Insurance Co.,* 264 F.2d 152 (5th Cir.1959); *Smith v. Danyo,* 585 F.2d 83 (3d Cir.1978).

Paul Whitehead (argued), Asst. Gen. Counsel, United Steelworkers of America, Pittsburgh, Pa., Earl Wise, Wise & Gutierrez, Canton, Ohio, for plaintiffs-appellants.

Robert E. Levitt, Larry Brown (argued), Sheila Markley, Canton, Ohio, for defendant-appellee.

Before KEITH and WELLFORD, Circuit Judges, and COHN, District Judge.*

COHN, District Judge.

This appeal from a judgment of the district court enforcing a labor arbitration award under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, presents a strange twist to the familiar argument that the arbitrator erred in determining whether a grievance was arbitrable. In this case it is the grievant who successfully sought arbitration, rather than the employer who initially resisted arbitration, who now asks that the arbitration award be set aside, on the ground that the arbitrator found the grievance arbitrable under a different section of the collective bargaining agreement than that relied upon by the grievant. We find that the arbitrator's decision as to which section applied is not the kind of arbitrability determination that requires ultimate resolution by a court; rather his decision was a resolution of the grievance on its merits through interpretation of the substantive provisions of the agreement. Such a decision is within the peculiar province of the arbitrator and is to be enforced, regardless of whether we might have interpreted the provisions differently, as long as the decision "draws its essence" from the collective bargaining agreement. *United Steel-*

* The Honorable Avern Cohn, U.S. District Judge for the Eastern District of Michigan, sitting by

*workers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); *Anaconda Co. v. District Lodge 27 of the International Assoc. of Machinists & Aerospace Workers, AFL–CIO,* 693 F.2d 35 (6th Cir.1982). Accordingly, we affirm.

## I.

### A.

The facts are not in dispute.

On December 17, 1978 appellant Albert A. DeAngelis (DeAngelis) was laid off due to a physical disability diagnosed as bronchitis and sarcoidisis. On February 7, 1980 DeAngelis obtained a statement from his treating physician that he was physically able to return to his employment as a pit-hand in the melt shop of the steel mill operated by appellee, the Timken Company (the employer). The employer refused to return DeAngelis to that specific job citing an opinion from its medical department that DeAngelis was not physically able to perform the job, which required exposure to considerable dust and dirt, potentially aggravating his respiratory condition. Alternative jobs were offered to DeAngelis but he refused them.

On October 27, 1980 DeAngelis filed the following grievance:

I was denied reinstatement to the occupation on which I was working at the time I was placed on laid off physical status, despite having received a complete release from my personal physician stating that I was able to return to that occupation with no restrictions and that such action is unreasonable, unjust and therefore, improper.

I request that I be reinstated to my original job and that I be made whole for all losses suffered.

I file this grievance under Articles V, VIII and IX of the 1977 Basic Labor Agreement and comparable provisions of designation.

any subsequent agreement between the Timken Company and United Steelworkers of America.

The grievance was denied on November 7, 1980:

You have not been medically approved to return to your former occupation. Therefore, the Company's action of not returning you to such occupation was proper. Your grievance is denied.

Appellants United Steelworkers of America, AFL–CIO–CLC and United Steelworkers of America, AFL–CIO–CLC, Local 1129 (the union), requested arbitration of the grievance pursuant to Article IX of the 1980 collective bargaining agreement between the union and the employer (the agreement). Both prior to and at the arbitration hearing, the employer took the position that the grievance was not arbitrable under Article IX.

Under Article IX the potential subject matter of grievances is quite expansive, Article IX, Sec. E:

The parties agree that the provisions of this Article IX provide adequate means, if followed, for the adjustment and disposition of *any* complaints or grievances.

(Emphasis added). However, the scope of arbitration is narrower, Art. IX, Sec. E (Step 3):

Only grievances involving the interpretation or application of this Agreement or disciplinary action are eligible for appeal to arbitration . . . .

This narrower scope is reemphasized in defining the power of the arbitrator, Art. IX, Sec. E (Step 4(d)):

The arbitrator shall have only the functions and powers set forth herein and shall have authority to decide grievances involving the interpretation or application of this Agreement of disciplinary action only.

A later section, Art. IX, Sec. E (Step 4(f)), further delimits the arbitrator's authority:

It is agreed, however, that the powers and the jurisdiction of the arbitrator shall be limited as follows:

(1) He shall have no power to add to or subtract from or modify any of the terms of this Agreement.

(2) He shall have no power to establish wage scales or change any wage rates . . . .

(3) He shall have no power to substitute his discretion for the Company's discretion in cases where the Company is given discretion by this Agreement.

(4) He shall have no power to award back pay except in a case of a grievance involving a disciplinary discharge or a disciplinary layoff . . . .

At the arbitration hearing, the employer argued that the grievance was not eligible for arbitration because it did not involve disciplinary action nor did it involve interpretation of the agreement in that no provision of the agreement pertained to the determination of whether an employee was physically able to do a particular job. The union responded that the grievance did involve interpretation of Article VIII-Seniority, Sections A(5) and H(5), which reads:

An employee who is absent due to physical disability for more than one (1) calendar year and thereafter returns to work with unbroken continuous service will be returned to the occupation on which he was working at the time of layoff . . . .

If an employee who has been laid off due to physical disability has been approved for work but is not physically able to perform the work to which he would otherwise be assigned under this Paragraph, he may be assigned, at the Company's discretion, to any permanent vacancy which thereafter occurs which he is physically able to perform, provided his continuous service would entitle him to the vacancy. If such employee is again physically able to perform the occupation to which he would otherwise have been returned within twelve (12) months after returning to work he shall then be returned to such occupation and shift . . . .

The employer also argued that its discretion to determine whether employees were physically able to perform specific jobs was

a reserved management right under Article III, which reads:

It is understood and agreed that the Company has all the customary and usual rights, powers, functions and authority of management.

Any of the rights, powers, functions or authority which the Company had prior to the signing of this Agreement, or any Agreement with the Union, including those in respect of rates of pay, hours of employment or conditions of work, are retained by the Company, except as those rights, powers, functions or authority are specifically abridged or modified by this Agreement or by any supplement to this Agreement arrived at through the process of collective bargaining.

Building on this contention, the employer told the arbitrator that because such a determination was committed to its discretion the arbitrator lacked jurisdiction or authority under Article IX to substitute his discretion for the employer's on this issue.

On June 4, 1981 the arbitrator filed his opinion and award. He opined the "discussion" section of his opinion by stating that the first issue to be raised was "the question of the arbitrability of the subject Grievance". He defined this question in the following way:

The question to be decided is whether the procedures to be followed and the rights of an employee to return to work following a physical disability layoff fall within the purview of the jurisdiction of the Arbitrator as set forth in the Basic Labor Agreement.

The arbitrator rejected the union's argument that the provisions of Article VIII were relevant to the grievance and accepted the employer's argument that, prior to entering the agreement, it had the inherent right to determine the physical abilities of its employees. However, the arbitrator found that the employer's inherent right had been somewhat modified by a provision neither party had relied on. He said:

Article XI-Safety and Health of the Basic Labor Agreement provides as follows:

"The Company shall continue to make reasonable provisions for the safety and health of its employees at the plants during the hours of their employment . . . ."

Inasmuch as this section is part of the Contract between the Company and the Union, this Arbitrator has decided that the only issue presented by the Grievant which is arbitrable is the Company's "reasonableness" in permitting or not permitting an employee to return to a particular job after a physical disability layoff. Inasmuch as Article IX of the Basic Labor Agreement provides that the Arbitrator shall have no power to substitute his discretion for the Company's discretion where the Company is given discretion by this Agreement, this Arbitrator can only look to the reasonableness of the Company's refusal to permit the Grievant to return to his original job of Pithand.

He further said this reasonableness standard did not authorize him to weigh the conflicting medical evidence as to whether DeAngelis could return to the pithand job. Rather, he decided that the only issue before him was whether the determination made by the employer, in reliance on its own medical department, was reasonable. Finding that the employer's determination was reasonable, the arbitrator denied the grievance by dismissing the appeal.

### B.

This action followed, appellants filing a § 301 complaint to vacate the award and the employer cross-claiming for enforcement. On cross-motions for summary judgment, the district court upheld the award, finding that the arbitrator's decision did "draw its essence" from the agreement, *Enterprise Wheel, supra,* 363 U.S. at 597, 80 S.Ct. at 1361, and therefore should be enforced. The district court rejected the union's argument that a more exacting standard of judicial review should be applied because the award was based on a determination of "substantive arbitrability"; the district court held there was no issue of arbitrability because the arbitrator did not

refuse to hear the grievance as non-arbitrable but instead proceeded to the merits.

## II.

### A.

The very narrow issue on appeal is whether the district court should have made its own determination as to whether Article VIII applied to the grievance, rather than deferring to the arbitrator's determination under the *Enterprise Wheel* standard. The union argues that this determination is one of "arbitrability" and that "the question of arbitrability is for the courts to decide". *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 583 n. 7, 80 S.Ct. 1347, 1353 n. 7, 4 L.Ed.2d 1409 (1960). Appellants explicitly concede that if this argument is rejected and the arbitration award is tested under the *Enterprise Wheel* standard, the award should be enforced. Reply Brief of Plaintiffs-Appellants at 7.

### B.

▮▮▮ By framing its objection to the arbitrator's award in terms of "arbitrability", the union is engaging in semantic sleight-of-hand. When the quotation from footnote seven of *Warrior & Gulf* upon which the union relies is placed in context, it is clear that the courts must not be misled by a party's invocation of "arbitrability" into substituting their interpretation of substantive terms of the agreement for the arbitrator's. The question of arbitrability "is for the courts to decide" only because it is necessary for the courts to decide, when a party resists arbitration, whether the parties have agreed to submit the contested issue to an arbitrator for decision; this determination logically precedes the arbitration itself.[1]

The Congress ... has by § 301 of the Labor Management Relations Act, as-

signed the courts the duty of determining whether the reluctant party has breached his promise to arbitrate. For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Yet, to be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, the judicial inquiry under § 301 must be *strictly confined* to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made.

*Id.* at 582, 80 S.Ct. at 1352 (emphasis added). However, in both *Warrior & Gulf* and the third case of the "Steelworkers Trilogy", *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), the Supreme Court refused to allow this limited preliminary determination to turn into a construction of the substantive terms of the agreements.

In *American Manufacturing* the employer resisted arbitration of a grievance involving refusal to rehire an employee on the ground of physical disability; the employer said its decision was a reserved management right and thus not arbitrable under the agreement. The agreement contained the "standard" arbitration provision submitting to arbitration all disputes between the parties "as to the meaning, interpretation and application of the provisions of this agreement." The Supreme Court held that the courts below had erred in not compelling arbitration.

The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Wheth-

---

1. The Supreme Court indicated in *Warrior & Gulf* that even the preliminary question of arbitrability itself may be committed to arbitration if the agreement clearly demonstrates that intent. 363 U.S. at 583 n. 7, 80 S.Ct. at 1353 n. 7. Although such an intent may not be clear in the

agreement here, it is of some interest that Article IX, Sec. I does indicate that the arbitrability of a grievance arising under a preceding, expired agreement is to be determined by the arbitrator in a separate hearing.

er the moving party is right or wrong is a question of contract interpretation *for the arbitrator* ....

The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, *or determining whether there is particular language in the written instrument which will support the claim* ....

The union claimed in this case that the company had violated a specific provision of the contract. The company took the position that it had not violated that clause. There was, therefore, a dispute between the parties as to "the meaning, interpretation and application" of the collective bargaining agreement. Arbitration should have been ordered. *When the judiciary undertakes to determine the merits of a grievance under the guise of interpreting the grievance procedure of collective bargaining agreements, it usurps a function which under the regime is entrusted to the arbitration tribunal.*

*Id.* at 567–69, 80 S.Ct. at 1346–47 (emphasis added).

A similar admonition was made in *Warrior & Gulf,* although the arbitration clause there contained an express exclusion not contained in the *American Manufacturing* agreement that "matters which are strictly a function of management shall not be subject to arbitration."

"Strictly a function of management" might be thought to refer to any practice of management in which, under particular circumstances prescribed by the agreement, it is permitted to indulge. But if courts, in order to determine arbitrability, were allowed to determine what is permitted and what is not, the arbitration clause would be swallowed up by the exception ....

....

... [T]he court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alter-

native is to utilize the services of an arbitrator.

*Warrior & Gulf, supra,* 363 U.S. at 584–85, 80 S.Ct. at 1353–54.

### C.

Both arguments against arbitrability raised by the employer before the arbitrator necessarily involved substantive interpretation of the agreement. A determination that the grievance did not involve "interpretation or application of this Agreement", because no provision was applicable, would also be a determination on the merits. Similarly, a determination that the arbitrator was barred from supplanting the employer's discretion with his own requires a prior determination, based upon construction of the agreement, that this was a case "where the Company is given discretion by the Agreement". Therefore, had the arbitrability question been raised in the district court in the usual fashion, either by the employer seeking a prior injunction against arbitration or by the employer's complaint to set aside the award, the district court would have been bound by the Supreme Court's admonition not to probe into the substantive merits of the grievance. Rather, given the presence of a "standard" provision committing interpretation and application of the agreement to arbitration, the district court would have declined to consider whether the grievance stated a claim under Article VIII; the mere fact that the parties disagreed about whether the agreement was applicable would be enough to make the dispute arbitrable under the teachings of *American Manufacturing.* The peculiar posture of this case, in which the party *seeking* arbitration attempts to intertwine the arbitration clause with the substantive provisions, does not warrant less restraint in the application of the arbitrability doctrine.

### D.

The union has cited no case directly supporting its position. Those cases on which it relies for the principle that a court may construe substantive terms of a collective

bargaining agreement while determining arbitrability are distinguished by much narrower arbitration clauses than the essentially standard clause used in the agreement involved in this case. *International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 249 v. Western Pennsylvania Motor Carriers Assoc.,* 574 F.2d 783 (3rd Cir.), *cert. denied,* 439 U.S. 828, 99 S.Ct. 102, 58 L.Ed.2d 122 (1978), (only "inadvertent or bona fide errors" in applying the term of the agreement could be appealed to the joint state committee for binding arbitration); *George Campbell Painting Corp. v. Brotherhood of Painters & Allied Trades, District Council No. 21,* 480 F.Supp. 120 (E.D.Pa.1979) (parties had made specific "side agreement" beyond arbitration clause of collective bargaining agreement submitting particular dispute to arbitration); *Bieski v. Eastern Automobile Forwarding Co.,* 396 F.2d 32 (3rd Cir.1968) (at issue was a specific provision that controversies affecting mergers were to be submitted to grievance procedure; the court's close scrutiny was also motivated by its finding that the joint state committee procedure used was tainted by conflict of interest).

This distinction was made clear by this court in *District 50, United Mine Workers of America v. Chris-Craft Corp.,* 385 F.2d 946 (6th Cir.1967), where grievances were limited to "working conditions, layoff or discharge" and there was no standard clause generally referring disputes over interpretation of the agreement to arbitration.

> Generally the Courts will not inquire into the factual circumstances of a dispute because under the standard arbitration clause to do so would be to consider the merits in an area reserved exclusively to the arbitrator by the agreement. But in the instant agreement we do not have a standard arbitration clause; and it is the agreement that circumscribes the inquiry of the Court.

*Id.* at 950. The narrow arbitration provision in *Chris-Craft* required the court to make a limited inquiry to determine whether the subject of the grievance was dis-

charge, as claimed by the union, or discipline for violation of the no-strike clause, as claimed by the employer, a matter expressly excluded from arbitration by the agreement.

### E.

■ Here the arbitrator described his conclusion that Article XIII was not applicable to the grievance in terms of "arbitrability" because Article IX limited his authority and "jurisdiction" by forbidding the arbitrator to "add, subtract or modify" the terms of the agreement and forbidding him to "substitute his discretion" for that of the employer, where the employer's discretion was guaranteed by the agreement. Although the arbitrator may have described these principles in terms of "arbitrability" and "jurisdiction", this court has generally treated such limitations on the authority of the arbitrator under the *Enterprise Wheel* "essence of the contract" standard and not as an issue of arbitrability. *Sears, Roebuck & Co. v. Teamsters Local Union No. 243,* 683 F.2d 154 (6th Cir.1982) (arbitrator improperly modified express contract language permitting subcontracting); *Detroit Coil Co. v. International Assoc. of Machinists & Aerospace Workers, Lodge # 82,* 594 F.2d 575 (6th Cir.), *cert. denied* 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52 (1979), (arbitrator improperly ignored express requirement that employer be notified of grievance within eight days); *International Brotherhood of Firemen and Oilers, AFL–CIO, Local No. 935–B v. The Nestle Co., Inc.,* 630 F.2d 474 (6th Cir.1980) (arbitrator substituted his own view of the proper sanction for insubordination where the agreement specifically reserved the management right to discharge for insubordination); *General Drivers, Warehousemen and Helpers, Local Union No. 89 v. Hays & Nicoulin, Inc.,* 594 F.2d 1093 (6th Cir.1979) (arbitrator improperly substituted his judgment of employee's physical fitness for the employer's). The Supreme Court confirmed that this approach to reviewing limitations on an arbitrator's authority was proper in *W.R. Grace & Co. v. Local Union 759, International*

Union of the United Rubber, Cork, Linoleum & Plastic Workers of America, —— U.S. ——, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983). In *W.R. Grace* the arbitrator interpreted a provision limiting his authority, similar to Article IX,[2] as preventing him from taking into consideration a conciliation agreement between the employer and the Equal Employment Opportunity Commission. The Supreme Court said:

> Under well-established standards for the review of labor arbitration awards, a federal court may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be the better one .... Unless the arbitral decision does not "dra[w]" its essence from the collective bargaining agreement, ... a court is bound to enforce the award and is not entitled to review the merits of the contract dispute ....
>
> ... Because the authority of arbitrators is a subject of collective bargaining, just as is any other contractual provision, the scope of the arbitrator's authority is itself a question of contract interpretation that the parties have delegated to the arbitrator .... Regardless of what our view might be of the correctness of [the arbitrator's] contractual interpretation, the Company and the Union bargained for that interpretation. A federal court may not second guess it.

*Id.* at ——, 103 S.Ct. at 2183.

### III.

The district court correctly found that the arbitrator reached the merits of the grievance based on his interpretation of the terms of the agreement and that therefore his award was to be given the substantial deference mandated by *Enterprise Wheel.* The actual decision of the arbitrator can be summarized as follows: (1) the grievance is arbitrable, (2) Article VIII by its terms is not applicable, (3) the only restriction placed by the agreement on the employer's discretion to determine DeAngelis' fitness to return to the pithand job is a reasonableness standard under Article XI, and (4) under this standard, the employer's determination is reasonable.

The fact that the arbitrator phrased his decision and award in terms of "arbitrability" does not alter the limited role of the court. As Professor Lewis B. Kaden has pointed out:

> The parties' stake in arbitral finality, then, exists not so much because the arbitrator has special competence, experience, or understanding, or even because sometimes he may be filling in gaps in the agreement, making rather than applying rules. Instead, the parties have an institutional stake in finality because the arbitrator is their creation; he functions by their consent and at their sufferance, and his powers and roles can and should be molded by them to suit their own purposes.... [R]esort to judicial review indicates, by definition, the breakdown of continuing consent, and so it does. But more narrowly it usually indicates dissatisfaction with a particular result.

Kaden, *Judges and Arbitrators: Observations on the Scope of Judicial Review,* 80 COLUM.L.REV. 267, 275–76 (1980).[3]

The true question in this case is whether a court or an arbitrator should decide if Article VIII of the agreement applies to DeAngelis' claimed right to return to his former job. In the final analysis, the parties agreed that such a question should be decided by arbitration, not litigation. We honor that agreement by our decision here.

The judgment of the district court is affirmed.

---

**2.** The agreement in *W.R. Grace* stated:
The jurisdiction and authority of the Arbitrator of the grievance and his opinion and award shall be confined exclusively to the interpretation and application of the express provision or provisions of this Agreement at issue between the Union and the Company. He shall have no authority to add to, adjust, change, or modify any provision of this Agreement.
—— U.S. at —— n. 4, 103 S.Ct. at 2182 n. 4.

**3.** This article was cited with approval by the Supreme Court in *W.R. Grace,* —— U.S. at ——, 103 S.Ct. at 2183 at 4645.

KEITH, Circuit Judge, dissenting.

I respectfully dissent. It is well-settled that arbitration is favored as a means of resolving labor disputes, and that the courts refrain from reviewing the merits of an arbitration award. *W.R. Grace & Co. v. Local Union 759, International Union of the United Rubber, Cork, Linoleum & Plastic Workers of America,* —— U.S. ——, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983); *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). However, this Court is bound by its decision in *Detroit Coil v. International Association of Machinists and Aerospace Workers, Lodge 82,* 594 F.2d 575 (6th Cir.), *cert. denied,* 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52 (1979). We have found no case which abrogates this decision. In *Detroit Coil, supra,* this court stated:

> An arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may, of course, look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award. 594 F.2d at 579 (quoting *United States Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)).

The arbitrator disregarded Article VIII of the collective bargaining agreement, and found that he had no authority to determine whether the grievant was capable of returning to his former job. The district court and the majority have concurred in this finding. However, this finding is in complete derogation of Article VIII and is contrary to our prior decision that an arbitrator's award must be based on the essence of the collective bargaining agreement. Article VIII is a plain and unambiguous provision of the collective bargaining agreement. The arbitrator expressly disregarded it in reaching his award.

This court has repeatedly found that an arbitrator is without authority to disregard or modify plain and unambiguous provisions. *Detroit Coil, supra; General Drivers, Warehousemen and Helpers, Local Union No. 89 v. Hays & Nicoulin,* 594 F.2d 1093, 1094 (6th Cir.1979); *Timken Co. v. Local Union 1123 United Steelworkers of America,* 482 F.2d 1012, 1014 (6th Cir.1973). By disregarding Article VIII, the arbitrator's award clearly fails to draw its essence from the collective bargaining agreement. Accordingly, I would reverse the district court's opinion and vacate the arbitration award.