879 F.2d 864
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION
NO. 2020, AFL-CIO, Plaintiff-Appellee,
v.
AT & T NETWORK SYSTEMS (COLUMBIA WORKS), Defendant-Appellant.
 
 No. 88-3895.
 United States Court of Appeals, Sixth Circuit.
 July 17, 1989.
 Before RALPH B. GUY, Jr., and RYAN, Circuit Judges, and DAVID D. DOWD, Jr., District Judge.*
 RALPH B. GUY, Jr., Circuit Judge.
 
 
 1
 Local Union 2020 of the International Brotherhood of Electrical Workers, AFL-CIO (the Union), seeks to obtain seniority credits for all of the female employees at AT & T Network Systems' Columbus Works (AT & T) who were denied such credits for time spent on maternity leave. The Union filed a grievance on behalf of its members, but AT & T refused to submit the dispute to arbitration. Arguing that the dispute was subject to arbitration under the terms of the collective bargaining agreement (CBA) between AT & T and Local 2020, the Union filed suit in federal district court seeking to compel arbitration. Faced with competing motions for summary judgment, and AT & T's alternate motion to stay the proceedings until final resolution of a class action pending against AT & T in the Northern District of Illinois, the district court granted the Union's motion for summary judgment, ordered arbitration, and denied the stay. AT & T now appeals.
 
 I.
 
 2
 Before addressing the Union's present claim for arbitration, it is necessary to set forth the history of litigation involving AT & T's maternity policy as it related to female, Columbus employees. In 1974, when negotiating a new collective bargaining agreement with AT & T,[1] the Union attempted to have maternity absences covered by the CBA's sickness disability pay provisions. This would have resulted in continuous accumulation of seniority credits (increases in "term of employment") during an employee's entire period of absence for maternity leave. The Company refused to grant the Union's request and, in 1976, a group of women filed a purported class action against AT & T on behalf of all female Union members at the Columbus plant, asserting that the CBA's maternity leave policy unlawfully discriminated on the basis of sex. Addington v. Western Electric Co., No. C-2-76-96, later re-captioned Ingold v. Local No. 2020, No. C-2-76-96 (S.D. Ohio, April 25, 1977).
 
 
 3
 So that full relief could be granted, the Union was named as a defendant in the Ingold class action. All parties admit, however, that the Union took the position that only the Company was liable, and refused to argue that the CBA was non-discriminatory. In this respect, and because two named plaintiffs were Union stewards, the Union was more closely aligned with the plaintiffs than with the defendant company.
 
 
 4
 In early 1978, the district court dismissed the Ingold class action for plaintiffs' failure to file a timely response to a defense motion to dismiss. The plaintiffs appealed the dismissal to this court. While this appeal was pending, the plaintiffs, the Union, and the Company entered into a stipulation. According to this stipulation, the plaintiffs agreed to dismiss, with prejudice, their class action against AT & T and the Union, in exchange for receiving the right to file a similar, non-class action discrimination complaint against the defendants. In October 1978, the named Ingold plaintiffs refiled their action as a non-class action complaint.
 
 
 5
 The individual action never went to trial. In 1983, AT & T and the plaintiffs entered into a settlement. In October 1983, the plaintiffs, AT & T, and the Union signed a stipulation agreeing to dismiss the plaintiffs' action, with prejudice, pursuant to Rule 41 of the Federal Rules of Civil Procedure.
 
 
 6
 It is clear that at the time it entered into the stipulation dismissing the plaintiffs' action, the Union knew that the plaintiffs and AT & T had entered into a settlement. The Union was not a party to that settlement, and the parties labeled the settlement as "confidential," with AT & T rejecting several requests by the Union to learn the terms of the settlement. It is thus unclear whether the Union knew of the terms of the settlement at the time it entered into the stipulation. At some point the Union became aware of the terms of the settlement, and, based thereon, filed a grievance against AT & T. According to the Union's grievance, the Company violated the terms of the collective bargaining agreement by unilaterally increasing the term of employment (seniority credits) of the Ingold plaintiffs for time spent on maternity leave without increasing the credits received by other female employees who had taken maternity leaves.
 
 
 7
 Relying on provisions in the CBA that exclude disputes involving the pension plan from the grievance procedure, AT & T argued that the calculation of term of employment was made under the pension plan, making disputes involving such calculations not arbitrable. On September 16, 1987, the Union filed the instant action seeking to compel arbitration. Both parties moved for summary judgment. Additionally, the Company moved to stay the present suit, pending resolution of a nationwide class action proceeding against it. EEOC v. AT & T Technologies, Inc., Nos. 78-C-3951 and 82-C-1542 (N.D.Ill. filed Oct. 5, 1978). In the class action, plaintiffs argue that AT & T's maternity policy violated Title VII by, inter alia, limiting the accrual of seniority credits during maternity leave. By the time AT & T filed its motion requesting a stay in the instant case, the Illinois district court had already granted EEOC's summary judgment motion as to liability in the class action, leaving only the remedy to be determined.
 
 II.
 
 8
 AT & T first argues that the district court erred in deciding that the Union's suit was not barred by res judicata. AT & T asserts that the district court declined to decide the res judicata question, instead improperly leaving that question for the arbitrator. Additionally, to the extent that it did rule on the merits of the res judicata claim, AT & T argues that the district court erred in holding that the Union is not barred from bringing its CBA-based action against AT & T.
 
 
 9
 AT & T is correct in suggesting that a district court should address basic res judicata questions before going on to consider whether or not a dispute is arbitrable. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu, 637 F.2d 391 (5th Cir.1981); Telephone Workers Union, Local 877 v. New Jersey Bell Telephone Co., 584 F.2d 31, 33 (3d Cir.1978). The district court judge, while suggesting that res judicata questions should be left for the arbitrator, nevertheless went on to discuss the merits of AT & T's claims. There is thus no basis for AT & T's argument that the district court improperly avoided the res judicata issue.
 
 
 10
 According to AT & T's substantive contention, the dismissal of the Ingold class action and the settlement of the subsequent individual action preclude the Union from pursuing the relief it now seeks. In its substantive argument, AT & T first asserts that the Union may not seek relief on behalf of all female employees under the contract because this issue was affirmatively decided by the two previous suits against AT & T. AT & T also argues that even if the Union's precise claim was not decided by the Ingold litigation, the claim was one that could have been raised in that litigation, and is thus barred from being raised in a subsequent action. Neither argument is persuasive.
 
 
 11
 AT & T cannot establish that, according to basic res judicata principles, the Ingold actions affirmatively resolved the Union's present claim.
 
 
 12
 A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies...." Southern Pacific R. Co. v. United States, 168 U.S. 1, 48-49 (1897). Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.
 
 
 13
 Montana v. United States, 440 U.S. 147, 153 (1979). The crucial factor is thus whether the second action (the Union's present suit) involves the same cause of action as the first suit (the Ingold suit).
 
 
 14
 In this circuit, we hold that to have an identity of claims, thus calling for a bar, "there must be an identity of the facts creating the right of action and of the evidence necessary to sustain each action." King v. South Central Bell Telephone and Telegraph Co., 790 F.2d 524, 528 (6th Cir.1986), citing Westwood Chemical Co. v. Kulick, 656 F.2d 1224, 1227 (6th Cir.1981); Artman v. Prudential-Bache Securities, Inc., 670 F.Supp. 769, 773 (S.D.Ohio 1987). Here, the district court correctly determined that AT & T cannot establish that the present suit is based on the same cause of action as the Ingold suit. The facts creating the Title VII cause of action in the Ingold suit are very different from those giving rise to the Union's contract-based grievance. The Title VII action was based on the fact that AT & T treated women differently from men in continuing the accumulation of employment benefits during periods of absence. The Union's current suit is premised upon AT & T's agreement to provide an employment benefit to some female employees but not to others, thereby allegedly discriminating in violation of the CBA. Not surprisingly, given the different facts underlying the two causes of action, the evidence the Union must present is very different from that the Ingold plaintiffs had to adduce in order to sustain their Title VII action. Unlike the Ingold plaintiffs, the Union need not concern itself with proof that AT & T's maternity policy discriminated against women. Conversely, in pursuing their claims, the Ingold plaintiffs did not need to prove that the arbitration clause of the CBA covers increases in seniority benefits or that the CBA prohibits AT & T from providing term of employment credits to some employees while withholding them from similarly situated employees. AT & T seems to suggest that because the group of employees who stand to benefit from the Union's suit, women who have taken maternity leaves and not received term of employment credit, are the same as those who would have benefitted from the dismissed Ingold class action, and because the relief they will receive is similar to that received by the individual Ingold plaintiffs, the Union's cause of action must be the same as the Ingold plaintiffs'. The district court correctly determined that, despite a similarity in relief received and benefitted parties, the two actions are clearly distinct.
 
 
 15
 AT & T's second res judicata argument springs from the basic principle that "the doctrine of res judicata forecloses relitigation of matters that were determined, or should have been raised, in a prior suit in which a court entered final judgment on the merits." Fellowship of Christ Church v. Thorburn, 758 F.2d 1140, 1143 (6th Cir.1985) (emphasis added); Migra v. Warren City School District Board of Education, 465 U.S. 75 (1984); Laskey v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), 638 F.2d 954, 956 (6th Cir.1981). AT & T maintains that the Union, if it wanted to pursue benefit claims on behalf of all female employees who had been denied seniority credits during maternity leaves, should not have agreed to the dismissal of the Ingold class action or to the settlement of the individual action in which seniority benefits were provided only to six employees.
 
 
 16
 We find AT & T's position to be unsupportable. Again, AT & T is confusing similarity of relief with identity of actions. At the time the Union signed the stipulation agreeing to dismiss the class action with prejudice, the Union had no cause of action under the CBA for inequality of treatment of similarly situated female employees. It was not until after the Union became aware of the terms of the settlement between AT & T and the individual plaintiffs, a settlement to which the Union was not a party and the terms of which were confidential, that the Union could raise its claim under the contract between AT & T and the Union. Even if the Union had been aware of the terms of the settlement before signing the stipulation, there would have been no basis on which the Union could have advanced a claim for benefits to employees who were not plaintiffs in the suit being settled.
 
 III.
 
 17
 AT & T's second argument on appeal is that the district court erred when it addressed the merits of the Union's claim. According to AT & T, the CBA excludes from arbitration matters relating to calculation of an employee's term of employment. Because the Union's claim is alleged not to be an arbitrable one under the governing bargaining agreement, AT & T asserts that the district court erred in granting the Union's request to compel arbitration.
 
 
 18
 Questions of arbitrability are to be determined by the court, not the arbitrator, based on interpretation of the agreement between the parties. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543 (1964); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 583 n. 7 (1960); United Steelworkers of America, AFL-CIO-CLC v. The Timken Co., 717 F.2d 1008, 1012 (6th Cir.1983). In the present case, several provisions of the CBA are relevant. According to Article 4, Sec. 1.16:
 
 
 19
 Term of Employment--A period of credited employment as computed by the Company under the Bell System Pension Plan or its applicable successor plan.
 
 
 20
 The collective bargaining agreement also contains a broad arbitration clause, in Article 12.
 
 
 21
 Any dispute arising between the Union and the Company with respect to the interpretation of any provision of this Agreement or the performance of any obligation hereunder may be referred, during the life of this Agreement, to an arbitrator in accordance with the procedure hereinafter set forth, provided:
 
 
 22
 (a) The procedure for the settlement of grievances, ARTICLE 11--GRIEVANCE PROCEDURE, has been exhausted, and
 
 
 23
 (b) Such dispute does not involve a provision of the Agreement which specifies that it is not subject to arbitration or from which it appears that the determination of the matter over which the dispute arose is within the judgment or discretion of the Company.
 
 Article 28 of the agreement states:
 
 24
 Nothing herein shall be construed to subject the Bell System Pension Plan (or its applicable successor plan) or the Sickness and Accident Disability Benefit Plan or its administration to the arbitration procedures of ARTICLE 12.
 
 
 25
 A number of articles in the agreement, e.g., Articles 21, 23, 25, 28, call for provision of benefits to certain employees, with the level of benefits hinging upon the employee's accumulated seniority. Additionally, in connection with the Ingold litigation, AT & T stipulated that the CBA provided for retention of all accumulated pre-maternity leave service credits and additional limited accumulation during the time a female is on a maternity leave. (This policy was modified by a later version of the CBA).
 
 
 26
 On the basis of these various CBA provisions, AT & T argues that questions relating to the calculation of an employee's term of employment are not arbitrable. Article 4 mandates that the determination of period of employment be made by the Company and under the Bell System Pension Plan. Article 12 holds that there can be no arbitration of disputes involving provisions expressly excluded from arbitration, or of disputes involving matters over which the Company has discretion. Article 28 excludes disputes involving the pension plan from arbitration. AT & T argues that because computation of seniority credits is made under the pension plan, and because Article 28 directs that disputes involving the pension plan not be subject to arbitration, disputes relating to seniority computations are excluded from arbitration. Alternatively, AT & T argues that Article 4's language directing that term of employment computations be made by the company indicates that these calculations are the sort of discretionary Company decisions that Article 12 insulates from otherwise mandatory arbitration.
 
 
 27
 We agree with the district court's rejection of these arguments. We approach this issue by first noting the very strong federal policy favoring arbitration of contract disputes. "[W]hen the language is ambiguous or unclear, any doubts concerning the scope of arbitrability should be resolved in favor of arbitration." McGinnis v. E.F. Hutton & Co., Inc., 812 F.2d 1011, 1013 (6th Cir.1987). Arbitration may not be denied unless the party contesting arbitrability can establish with positive assurance that the arbitration clause cannot be interpreted so as to cover the dispute at issue. General Driver, Warehousemen and Helpers, Local Union 89 v. Moog Louisville Warehouse, 852 F.2d 871, 873 (6th Cir.1988); Salary Policy Employee Panel v. Tennessee Valley Authority, 731 F.2d 325, 328 (6th Cir.1984); District 50, United Mine Workers v. Chris-Craft Corp., 385 F.2d 946, 949 (6th Cir.1967). In fact, this court has gone so far as to hold that, under the teachings of the Supreme Court in the area, "the mere fact that the parties disagreed about whether the agreement was applicable would be enough to make the dispute arbitrable." Timken, 717 F.2d at 1013. AT & T cannot meet the heavy burden of establishing that the dispute is undeniably not arbitrable.
 
 
 28
 Despite AT & T's colorable argument, we do not think that Article 28 of the CBA necessarily excludes from arbitration the "term of employment" issue. As the district court aptly notes, it is not at all unreasonable to read the collective bargaining agreement as incorporating, by reference, those portions of the pension plan that have a direct bearing on the employee's bargained-for rights under the agreement. The calculation of an employee's term of employment would clearly be covered under the CBA under such an interpretation, as an employee's calculated term of employment directly determines, inter alia, an employee's entitlement to vacation time, sick leave, layoff allowances, pension benefits, termination allowance, and transfer rights. The right to arbitrate disputes over these sorts of benefits provided by the CBA becomes virtually meaningless if there is no right to arbitrate decisions as to term of employment calculations, which directly determine benefit levels.
 
 
 29
 Our concurrence in the district court's reading of the CBA is further supported by a somewhat similar case decided by the Fifth Circuit. In Communications Workers of America v. Southwestern Bell Telephone Co., 415 F.2d 35 (5th Cir.1969), the court was faced with a union seeking arbitration of an employee's claim that his involuntary retirement offended a CBA provision calling for consideration of seniority in treatment of employees. The company defended the claim by asserting that the employee was retired in accordance with the company's employee benefit plan, and that issues relating to the benefit plan were not subject to arbitration under the CBA. Along with finding the language excluding benefit plan calculations from arbitration to be ambiguous, the court went on to suggest that even if plan issues are not arbitrable, plan actions become arbitrable when they directly affect contract rights. While the decision to retire the worker was made under the plan, "the Union's claim [was] not predicated upon any denial of rights provided under the Plan, but rather upon the alleged infringement of contract rights by its operation." Communications Workers, 415 F.2d at 40. Similarly, the Union in the present dispute is not complaining about the Bell System Pension Plan, but about the potential infringement of contract rights resulting from AT & T's method of calculating term of employment. Because disputes involving these rights are arbitrable, so too is a dispute involving calculations of terms of employment that control the availability of bargained-for rights.
 
 
 30
 Finally, we find AT & T's argument that seniority calculations are made strictly under the pension plan, and thus not subject to arbitration, to be undermined by the CBA's section on maternity leave. In the Ingold litigation, AT & T stipulated that the bargaining agreement contains provisions outlining the Company's maternity leave policy, which expressly spell out how a female employee's decision to take a maternity leave will affect her accumulation and retention of seniority. This section of the CBA, like all others, was bargained for; in fact, both parties admit that the Union and AT & T bargained over full seniority benefits for maternity absences, but that the Company was unwilling to grant such credits. This is significant because the fact that the CBA contains a section dealing with maternity leaves, in which the agreement expressly details how term of employment computations will be made for such occurrences, strongly suggests that seniority calculations are actually a bargained-for part of the CBA. By providing seniority credits to the six Ingold plaintiffs but not to any other female employees, AT & T is arguably violating the agreement provisions dealing with maternity leaves, not simply following the dictates of a pension plan. Nothing in the CBA suggests that disputes involving the maternity leave policy are not arbitrable.
 
 
 31
 Along with asserting that term of employment calculations are made under the Bell System Pension Plan, and thus are not arbitrable, AT & T argues in the alternative that term of employment calculations are to be made by the Company, in its discretion, not subject to arbitration. Article 4 is by no means explicit in suggesting that such calculations are left to unfettered Company discretion, so the federal policy in favor of arbitration mandates a ruling that disputes involving exercises of such decision-making authority be arbitrated. Also, the fact that AT & T has consistently bargained with the Union over maternity policy, agreeing to provide one month's credit while an employee is on maternity leave, contradicts AT & T's contention that decisions as to seniority credits are its alone, not subject to arbitration. Providing employment benefits during maternity leaves is similar to the payment of overtime wages or the right to vacation or termination benefits--in each case, entitlement to benefits is determined by the contract, as a result of bargaining, and disputes involving these contract rights are subject to arbitration under Article 12 of the CBA.
 
 
 32
 Finally, AT & T argues that even if the Union's grievance is deemed arbitrable, the Union has waived its right to pursue arbitration. AT & T makes essentially the same argument here that it made in claiming that the Union should have raised its claims on behalf of all female employees during the Ingold litigation. We reiterate our conclusion that there was no way for the Union to bring its claims under the CBA during the course of the previous litigation. The Union could not have known, when it agreed to a dismissal of the class action, that five years later AT & T would settle with the individual plaintiffs and provide them benefits that were not made available to similarly situated employees. When it was asked to sign the stipulation agreeing to the dismissal of the individual plaintiffs' Title VII action in 1983, the Union had no basis on which it could have made a contract-based claim on behalf of all non-plaintiff female employees, even if the Union had known the terms of the settlement.[2]
 
 IV.
 
 33
 As its final point on appeal, AT & T argues that the district court erred in declining to stay the Union's request for arbitration until after the final resolution of a nationwide class action on behalf of all female employees of AT & T that is now pending in the United States District Court for the Northern District of Illinois. EEOC v. AT & T Technologies, Inc., Nos. 78-C-3951 and 82-C-1542 (N.D.Ill. filed Oct. 5, 1978). In that class action, in which AT & T has already been held liable, the class is seeking payment of benefits that it claims were unlawfully withheld from female employees during maternity leaves. AT & T here argues that the district court, in deciding that it was unnecessary to stay the current action until after resolution of the class action, relied upon an improper factual assumption and failed to recognize that the parties, issues, and remedies are the same in the two suits. Because it claims that this duplication of effort wastes judicial resources and creates the possibility of inconsistent judicial results, AT & T argues that this court must reverse the district court and grant the stay.
 
 
 34
 We do not agree with AT & T's position. A district court has discretion to determine whether a stay is necessary to avoid piecemeal, duplicative litigation and potentially conflicting results. Colorado River Water Conservation District v. United States, 424 U.S. 800, 817-20 (1976). In exercising this discretion, district courts are to be accorded wide latitude. Kerotest Manufacturing Co. v. C-O-2 Fire Equipment Co., 342 U.S. 180, 183-84 (1952); Ohio Environmental Council v. United States District Court, Southern District of Ohio, Eastern Division, 565 F.2d 393, 396 (6th Cir.1977). We thus will reverse only if it seems clear that the district court abused its discretion.
 
 
 35
 While no precise test has developed to guide district courts in deciding whether to grant requested stays, courts have noted a number of relevant considerations. The most important consideration is the balance of hardships; the moving party has the burden of proving that it will suffer irreparable injury if the case moves forward, and that the non-moving party will not be injured by a stay. Landis v. North American Co., 299 U.S. 248, 255 (1936); Ohio Environmental Council, 565 F.2d at 396. The district court must also consider whether granting the stay will further the interest in economical use of judicial time and resources. Emerson Electric Co. v. Black & Decker Manufacturing Co., 606 F.2d 234 (8th Cir.1979); Aetna State Bank v. Altheimer, 430 F.2d 750 (7th Cir.1970). Relevant to this consideration is the question of whether a separate suit in another jurisdiction involves the same issues and parties and is likely to consider adequately all interests before the court considering a stay. We are convinced that the district court accurately analyzed these factors in concluding that AT & T was not entitled to have the present action stayed.
 
 
 36
 AT & T's first contention--that the district court erred by relying upon improper facts--is not enough to carry the day. While it is true that the district court stated that the Union's action could affect the rights of both male and female employees, even though the Union has consistently maintained its suit affects only the rights of female employees, we do not think this error was significant. This was only one, small factor relied upon by the district court, and the remainder of the district court's analysis makes clear that the court went on to thoroughly consider the other factors relevant to AT & T's motion requesting a stay.
 
 
 37
 Nothing presented to the district court or to this court establishes that AT & T is likely to suffer irreparable injury if it is forced to arbitrate the Union's grievance. AT & T's only claim in this regard is its assertion that it faces the possibility of irresolvably inconsistent results. While we note that the possibility that the district court in the class action and the arbitrator, should the arbitrator find for the Union, may not order precisely the same relief, it is hard to imagine a situation in which AT & T will be unable to determine how it must respond. The fact that the court might grant different relief under Title VII than an arbitrator grants under the CBA does not cause irreparable injury to AT & T.
 
 
 38
 Additionally, we note that any possibility of inconsistent relief orders is a direct result of AT & T's actions. If AT & T was genuinely concerned about the possibility of conflicting obligations, it should not have settled the Ingold litigation. The plaintiffs in Ingold sought relief under Title VII, just like the class in the action pending in Illinois. The Illinois action was filed in 1978, long before AT & T's 1983 decision to settle Ingold. AT & T agreed to risk the possibility of inconsistent results by providing the Ingold plaintiffs with benefits conceivably different from those the district court will order in the EEOC class action, so we are unsympathetic to AT & T's claim that it is the Union who threatens them with potentially divergent obligations by pursuing the CBA-based claim. Once AT & T agreed to provide seniority credits to the Ingold plaintiffs, despite the pendency of the EEOC class action, the Union was entitled to seek similar seniority credits for all its members.
 
 
 39
 As we have discussed previously, it is also clear that the Union in this case seeks to vindicate different rights, under different legal theories, on behalf of a different group of employees, than the EEOC in the Illinois class action. While some overlap of remedies is likely, and the employees represented by the Union are a subset of the larger group represented in the nationwide class action, the district court did not abuse its discretion in ruling that the processing of the class action would not automatically protect the rights and interests of the Union's members under the Columbus plant CBA. Given this potential divergence of interests, along with AT & T's inability to prove irreparable injury, the district court was within its discretion in denying the stay.
 
 
 40
 The Union is not barred from bringing its action, its claims are arbitrable under the terms of the collective bargaining agreement, and the district court acted within its discretion in denying AT & T's motion requesting a stay. The decision of the district court is AFFIRMED.
 
 
 
 *
 Honorable David D. Dowd, Jr., United States District Court for the Northern District of Ohio, sitting by designation
 
 
 [1]
 The negotiations were actually with Western Electric, which was the Company's name at the time. All litigation has treated AT & T and Western Electric as the same entity, and we will refer solely to AT & T or "the Company."
 
 
 [2]
 The district court and the Union stress the fact that, at the time the Ingold settlement was entered into, the Union had no idea what the terms of that settlement were. AT & T argues that the Union had at least constructive knowledge of the settlement terms, so if the ruling that the Union did not waive its right to arbitrate hinges upon the Union's ignorance of the settlement terms, the issue must be remanded for a factual finding. While we have little sympathy with AT & T's position, as it is clear AT & T actively attempted to keep the Union from discovering the terms of the settlement, we do not think the question of whether the Union actually had knowledge of the settlement terms is outcome determinative. Even if the Union had knowledge, it still would have had no basis for advancing the claims of non-plaintiff, female employees. The suit involved eleven women's discrimination claims against AT & T, and there was no way that suit could have established AT & T's liability, under the CBA, to non-plaintiffs